## MOYER v. PRESTON.

WATER AND WATER RIGHTS — APPROPRIATIONS OF WATER FOR IRRIGATION — RIGHTS OF RIPARIAN OWNER — SPRING AS TRIBUTARY TO A RIVER — COMMON LAW — BILL OF EXCEPTIONS — AUTHENTICATION OF.

1. Waters of a spring which naturally flow into a neighboring river, the spring being a tributary thereof, are to be treated as part of the waters of the river, in the determination of the rights to the use of the waters of said river.

2. The common law doctrine relating to the rights of a riparian proprietor in the water of a natural stream, and the use thereof, is unsuited to our requirements and necessities, and never obtained in this State.

3. So much only of the common law as may be applicable has been adopted in this jurisdiction.

4. The right to the use of water for beneficial purposes depends upon a prior appropriation.

5. Such right and the obligation to protect it existed anterior to any legislation upon the subject. It is the natural outgrowth of the conditions existing in this section of the country.

6. Section 1317 of the Revised Statutes of 1887 being Section 1 of the Law of 1875 relating to irrigation, did not recognize a different principle.

7. To constitute an appropriation there must exist not only an intent to take the water, but that intent must be accompanied by some open physical demonstration, and there must ultimately be an application to some beneficial use.

8. The initial act must be followed up with reasonable diligence, and the purpose consummated without unnecessary delay, in order that, by the doctrine of relation, the time of appropriation may relate back to such initial proceeding.

9. Where in 1885 one M. did two days' work in cleaning out a spring, and thus facilitated the flow of the waters thereof to the river of which it is a tributary, and did no other work in that or the following year except one day's work in 1886 again cleaning the spring, but in the spring of 1887 commenced a dam and ditch which were necessary in the application of the water to the uses intended; Held that there was a palpable

lack of such diligence as is required, and the building of the dam and excavation of the ditch can not be connected with the work of cleaning the spring in 1885 and 1886 so as to date M.'s appropriation from such work; but his appropriation as to time depends upon what was done in 1887.

10.  The more important aim, if not ·the entire scope of the statutes of 1886 requiring statements of water appropriations to be filed by the respective appropriators in the offices of the county clerk and clerk of ·court, and the statute of 1888 requiring them to be filed in the county clerk's office only, was that of notice and record.

11.  As against one who is in no better condition, the neglect to file the statement with the clerk of court as required by the statute of 1886, can not be held as fatal to an appropriation otherwise made in good faith.

12.  The certificate of the clerk of court is necessary to properly authenticate a bill of exceptions brought into the record as either the original or a transcript thereof.

[Decided April 27, 1896.  Commenced in the District Court on or about September 17, 1890; amended petition filed May 31, 1892.]

ERROR to the District Court for the county of Crook, HON. WILLIAM S. METZ, Judge.

The case is stated in the opinion.

*J. L. Stotts* and *N. K. Griggs*, for plaintiff in error.

Plaintiff in error, Moyer, is entitled to the water, claimed by him, as a riparian owner.  (Act of Congress July, 1866; R. S. Wyo., Sec. 1317; Jones v. Adams, 19 Nev., 78; Line v. Haggin (Cal.), 4 Pac., 925; Union M. & M. Co. v. Ferris 2 Saw., 195; Hanson v. Mc Cue, 42 Cal., 303; Elliott v. R. R. Co., 10 Cush., 191.)  As Moyer became the owner in fee simple of the lands in question, on August 9, 1885, and at that time became entitled to claim the water as a riparian owner, under the statute of 1875, then in force, no subsequent act, either of defendant in error ˙or of the legislature, could in anywise interfere with Moyer's claim as such riparian owner.  Section 31 of the act of 1886 expressly reserved all vested rights.

Preston having failed to file a statement of his claim with the clerk of court, no evidence can be considered in support thereof. (R. S. Wyo., Sec. 1353.) Moyer filed his statement with such clerk before he introduced any evidence, hence his evidence was competent. He settled upon his pre-emption claim July 24, 1885. Commenced his ditch in the fall of 1885, for the purpose of appropriating all the waters of the spring for domestic and agricultural purposes; in 1886, as cattle had tramped over said spring and ditch, it became necessary for him to fence the same, and in that year he traveled 300 miles and return for fencing with which to enclose the spring and ditch. On April 28, 1887, he turned the water upon his land, and used the same for the irrigation of his crops. Irrigation was unnecessary in 1888 and 1889, owing to the natural rainfall and moisture. In 1890 he again commenced to use the water, and used it until enjoined in this suit, in October, 1890. Moyer's appropriation was in view of this and other evidence prior to that of Preston. (Kimball v. Gearhart, 12 Cal., 27; McDonald v. Bear River, etc., 13 Cal., 220; Irwin v. Strait, 4 Pac., 1215; McCauley v. McKeig, 8 Mont., 389.) To cause water to run in a flume or ditch, and then go to waste is not a beneficial use. Preston had allowed as much water to go to waste as Moyer claimed a right to. Moyer was entitled to that wastage regardless of all other questions. (Simpson v. Williams, 18 Nev., 432; Hindman v. Rizor, 21 Or., 112; Sieber v. Frink, 2 Pac., 901; Irwin v. Strait, 4 id., 1215; Maeris v. Bicknell, 7 Cal., 261; Weaver v. Eureka, 15 id., 271; Davis v. Gale, 32 id., 26; Larimer v. People, 8 Colo., 614; Wheeler v. Northern Co., 10 id., 582; Dicks v. Caldwell, 14 Nev., 167; Edgar v. Stevenson, 11 Pac., 704.)

Percolating water can not be permanently appropriated, and the owner of land, on which a spring is situated, may so use his land as to cut off the water from an irrigating ditch which is supplied from the spring. (Hanson v. McCue, 42 Cal., 303; Huston v. Leach, 53 id., 262; Cross

v. Kitts, 69 id., 271; So. P. R. R. v. Dufour, 95 id., 615; Mosier v. Caldwell, 7 Nev., 363; Strait v. Brown, 16 id., 317.) To constitute a watercourse there must be a channel — a bed to the stream — not merely low land or a slough over which water flows. (Chicago, K. & W. R. Co. v. Morrow, 42 Kan., 339; Palmer v. Waddell, 22 id., 352; Gibbs v. Williams, 25 id., 1.)

*Tom Hooper* and *Gibson Clark*, for defendant in error,

The facts clearly show that the appropriation of water by Moyer and Diefenderfer was inferior and subordinate to that made by Mc Crae whose rights Preston succeeded to. In order that there may be a lawful appropriation two things must concur. First, there must be a diversion of the water by some means from the stream, and second, the water must be applied to some beneficial use. Nothing was done by Moyer in 1885 and 1886 which at all approached an appropriation. The spring was on Diefenderfer's land, and until Moyer dug his ditch he did nothing to convey the water upon his own land. The law only permits the doctrine of relation as to time to apply to cases where reasonable diligence has been observed. (Pomeroy on Riparian Rights, Secs. 52–54 and cases cited.)

The doctrine of riparian rights as it existed at common law never at any time obtained in Wyoming. It was not applicable. (Coffin v. Left Hand Ditch Co., 6 Colo., 443.) The object of the congressional act of July, 1866, was not the recognition of riparian rights, but rather the contrary. (Atchison v. Peterson, 20 Wall., 507 ; Basey v. Gallagher, id., 670.) Neither does our own Statute of 1875, Sec. 1317 R. S., confer riparian rights upon one through whose lands a stream flowed. (Coffin v. L. H. Ditch Co., supra.)

With reference to the failure of defendant in error or his predecessor to file the statutory statements, all the evidence offered by Preston was received without objection. The statute, moreover, does not make it obligatory

upon a water-right claimant to offer proof showing that he had filed the statements. It does not follow that the statement was not filed because the record fails to show that it was filed. The statute requiring the filing and the penalty for its neglect was repealed before the hearing was had. Again this is not merely a proceeding for the adjudication of water rights brought under the Act of 1886, but is a suit brought also to recover damages and to enjoin Moyer from wrongfully diverting the water.

The evidence does not show a wilful waste of water on Preston's part. But even if there had been, that fact would not deny him the water he was actually entitled to, because of application to beneficial uses.

The record fails to show that the bill of exceptions was ever filed in the office of the clerk of the district court, and it is not certified to by such clerk. It is not properly in the record nor a part of it. It must appear by entry of record that the bill was presented for allowance within the time given. (Howard v. Bowman, 3 Wyo., 312; Jones v. Christian, 24 Mo. App., 540; Burk v. R. R. Co., 26 O. St., 643; Hill v. Bassett, 27 id., 597; Hefner v. Moyst, 40 id., 112.) It must appear from the transcript certified to by the clerk under seal of court that the bill was filed as a part of the record. (R. S., Sec. 2649; Jenkins v. Wilson, 40 N. E., 39; Spence v. James, 31 S. W., 540; Jennison v. Stall, 41 N. E., 74; Walsh v. Brockway, id., 76; Guenther v. State, id., 13; Holstadt v. Daggs, 4 Mo. App., 158; Herman v. Harbunts, 27 N. E., 731; Guirl v. Gillett, 24 id., 1036; Walker v. State, 35 Ark., 358.) The bill must be authenticated by the clerk under seal of the court. (Roy v. U. M. Co., 3 Wyo., 422; Martin v. Fillmore, 62 N. W., 863; Martin v. C. C. Bank, id., 872; Moore v. Waterman, 40 Neb., 498; Helsel v. Seeger, 39 Pac., 237; Rickwine v. Jones, 39 N. E., 460; 2 Ency. Pl. & Pr., 283.) The transcript must be further attested by the certificate of the clerk under seal that it is a full and complete transcript of the entire record in the trial court, or of so much thereof as is

necessary to show the errors complained of. (State v. Cash, 36 Kan., 623; State v. Ricker, 40 id., 14; Neiswender v. James, 41 id., 463; 2 Ency. Pl. & Pr., 283 and 284, and cases cited.) When papers are transmitted to the appellate court, the clerk below must annex his certificate showing them to be the original or copies as the case may be. (Shewey v. Manning, 14 Wis., 486.) The power of the judge is limited to settling, allowance, and signing of the bill, the clerk of court only has the power to authenticate when settled, allowed, and signed. (R. S., Secs. 2649, 3135; 1 Ency. L., 1020; n. 5, and cases cited.)

POTTER, JUSTICE.

Whether this action was one brought under the then existing statutory provisions or an adjudication of the priorities of rights to use water for beneficial purposes, or was purely a personal action brought by defendant in error to restrain plaintiff in error from unlawfully diverting the waters of a natural stream to the detriment of defendant in error, and for damages for a past diversion of such water, and incidentally a determination of the priorities between such parties, need not be determined. The amended petition is entitled as to parties the same as any ordinary civil action, but seems also to be entitled as provided by the statute of 1886, providing for an adjudication of water rights. An order of the court appears, fixing a day for hearing, and another referring the case for the taking of testimony, which indicate that it was then understood to be a statutory proceeding. It is clearly shown, however, that the parties to this cause were the only persons interested as appropriators from said stream, and it is apprehended, by the court, which was apparently the understanding of counsel as well, that all the matters involved can be decided without any special reference to the precise character of the action, or any determination of that matter. The only possible question which would at all depend upon a decision concerning the nature of the

action is the method and time of bringing the cause to this court, and we were led to understand on oral argument that any objection in that respect which was urged in the brief of counsel for defendant in error was not insisted upon. Although no motion was filed or presented to dismiss the proceedings in error, the point is made on behalf of defendant in error, that the record before us is not sufficiently authenticated to authorize a review of the judgment of the district court. This suggestion has not escaped the attention of the court, and our views thereon will be expressed before concluding this opinion; notwithstanding those views, however, we have concluded to discuss and dispose of the cause upon its merits, assuming for the time being, at least, that the document on file, purporting to constitute the record of the cause, is such record. We are the more inclined to such course for reasons which will sufficiently appear.

On or about August 19, 1886, one William J. Mc Crea surveyed the line of an irrigating ditch from Little Powder River, and on that day filed in the office of the county clerk, and ex-officio register of deeds of Crook County, a statement of his claim to a water right, the water to be diverted by means of the ditch, the line for which had been thus surveyed. About the same time, or perhaps somewhat later, but clearly within sixty days thereafter, he commenced the construction of such ditch. The water was intended to be used in irrigating certain lands, some of which he had entered upon and improved as a homestead, and others had been filed upon under the Desert Land Act. Connected with the ditch was a dam constructed across said stream. The work upon this dam and ditch was continued until further work was prevented by the winter, but some water was allowed to flow into the ditch during the fall of 1886. Early in the spring of 1887 work was resumed and the ditch was finally completed in August or September of that year. In May or June of 1887 water was carried through the ditch as it then existed, and was used for irrigation. The ditch was

three feet wide on the bottom and about four miles in length. The testimony of Mc Crea was to the effect that in 1887 he irrigated three hundred acres of land. Each year thereafter the ditch was used for the purpose intended, and water from the stream aforesaid, diverted thereby, was devoted to the irrigation and reclamation of lands lying under or adjacent to the ditch, and belonging to Mc Crea, until May, 1890, when James G. H. Preston, the defendant in error, became, by purchase, the owner of the Mc Crea lands, ditch, and water rights. In 1890 the plaintiff in error diverted the waters of said stream at a point about five miles above the head-gate of the Mc-Crea ditch, and this action was the result.

July 24, 1885, Charles A. Moyer settled upon and improved 160 acres of land, which he subsequently entered as a pre-emption and upon which he made final proof August 9, 1886, and thereafter received a patent from the government therefor. One Diefenderfer at the same time became a pre-emptor upon 160 acres of land adjacent to Moyer's claim, his filing and final proof being made on the same days respectively as in the case of Moyer. He received a government patent for his land.

Little Powder River flowed in its regular channel through the lands of Moyer and Diefenderfer, and upon the land of the latter was located a spring, which was situated about 200 yards from the main channel of said river. This spring was tributary to the river, and the waters of the spring formed a part of the source of the river; upon this point there appears to be no dispute. In 1885 Moyer did one or two days' work in cleaning out the spring, and making a more defined channel for the flow of the waters therefrom to a point on the river, where a dam was afterwards constructed by him. This work he states was done by him for the purpose and with the intention of appropriating the waters of the spring for the irrigation of his land. He did not apply the water to any such use either in 1885 or 1886, and during those years did nothing to consummate his said purpose, except as above stated, and

in 1886 was occupied one day in again cleaning out the spring. In the spring of 1887 he commenced the construction of the dam across Little Powder River, which was at some point on Diefenderfer's land, completed the dam and also a ditch leading from the river, into which the water was turned on or about April 28, 1887, and about two acres of land were irrigated for one week. This ditch was, according to the testimony of Moyer, from 200 to 300 yards in length, although Mr. Diefenderfer testifies that it did not exceed 75 yards. Moyer did not use the water either in 1888 or 1889, his excuse being that irrigation was not required in those years, by reason of the natural moisture or rainfall; but in the year 1890 he used the water three or four weeks irrigating four or five acres of land. In 1888, the land of Diefenderfer was sold to Moyer. In 1886, but subsequent to the filing of the statement of the Mc Crea ditch, Moyer and Diefenderfer filed a statement of claim to water. Moyer filed no other statement until September 30, 1891, which was after the commencement of this suit; the latter statement was then filed in the office of the county clerk and also with the clerk of the district court.

The above facts are, in our opinion, to be fairly gathered from the testimony.

Defendant in error, Preston, in his petition, alleged that his statement of water right was also filed with the clerk of the district court. No proof was offered as to that matter.

The trial court found that the appropriation of the defendant in error by means of the Mc Crea ditch was prior to the appropriation of the plaintiff in error, and it was adjudged that the former was entitled to the first right to the use of the waters of said stream to the extent of four and two-sevenths cubic feet per second of time, which, upon the basis of the standard adopted by the legislature, is sufficient to irrigate 300 acres of land. The plaintiff in error was adjudged entitled to a second right to the use of the waters of said stream to the extent of five fourteenths

of one cubic foot of water per second of time; and the said Moyer was perpetually enjoined by the decree from in any manner interfering with the use of the waters of Little Powder River by Preston and those claiming under him to the extent of the amount of water allowed to him by the decree, for the irrigation of the lands described in the petition. The costs were taxed against the plaintiff in error, but there was no finding or judgment as to damages.

The only grounds for the motion for new trial filed by plaintiff in error which are sufficiently definite to require consideration, and the only grounds relied upon in this court, are that the findings, judgment, and decision of the court are not sustained by the evidence, and are contrary to law.

The plaintiff in error claims the water, first as a riparian owner, and, second, by virtue of his having complied with the irrigation laws of this State, having filed a statement of his claim on September 30, 1891, with both the county clerk and clerk of court. Counsel for plaintiff in error state their position substantially as follows : That it was unnecessary for Moyer to file such statement in order for him to claim as a riparian owner, or under the law of 1875. That the only reason he did so, and the only benefit he could receive by so doing, was and is to be found in the laws of 1886, which declared that proof could not be made without the prior filing of the statement; and that hence, by virtue of the law he was given a vested right to the water, and by virtue of the filing of his statement he was given the statutory right to introduce evidence of his right.

Moyer's right is claimed further, however, to the waters of the spring because as it is insisted they were percolating waters and never flowed in a defined channel to the river until by his labor they were given such a channel; and it seems to be further contended that Moyer was the first appropriator of the water in point of time.

In view of the fact that Moyer himself, as well as all

the other witnesses who speak upon that matter, testified that the waters of the spring did naturally flow into the river, and were tributary to it, the trial court was assuredly warranted in treating such waters as a part of the waters of the river, and we deem it unnecessary to further consider the proposition with reference to percolating waters.

It is insisted that the defendant in error could secure no rights by appropriation superior to the interests of the plaintiff in error as a riparian owner.

The common law doctrine relating to the rights of a riparian proprietor in the water of a natural stream, and the use thereof, is unsuited to our requirements and necessities, and never obtained in Wyoming. So much only of the common law as may be applicable has been adopted in this jurisdiction. The doctrine invoked is inapplicable. A different principle better adapted to the material conditions of this region has been recognized. That principle, briefly stated, is that the right to the use of water for beneficial purposes depends upon a prior appropriation. Our statutes have repeatedly recognized this right, and the constitution of the State declares it. We incline strongly to the view expressed by the Supreme Court of Colorado, to the effect that such right and the obligation to protect it existed anterior to any legislation upon the subject. (Coffin v. Left Hand Ditch Co., 6 Col., 443.) We esteem it unnecessary, if it would not indeed be superfluous, at this late day to enter into any elaborate discussion of the reasons which gave birth to this doctrine. It is the natural outgrowth of the conditions existing in this section of the country. The climate is dry; the soil is arid and largely unproductive in the absence of irrigation, but when water is applied by that means it becomes capable of successful cultivation. The benefits accruing to land upon the banks of a stream without any physical application of the water to the land are few; and while the land contiguous to water, and so favorably located as to naturally derive any sort of advantage therefrom, is comparatively small in

area, the remainder, which comprises by far the greater proportion of our land otherwise susceptible of cultivation, must forever remain in their wild and unproductive condition unless they are reclaimed by irrigation.    Irrigation and such reclamation can not be accomplished with any degree of success or permanency without the right to divert and appropriate water of natural streams for that purpose and a security accorded to that right.    Thus, the imperative and growing necessities of our conditions in this respect alone, to say nothing of the other beneficial uses, also important, to which water has been and may be applied, has compelled the recognition rather than the adoption of the law of prior appropriation.

. The first section of the statute of 1875, which became Section 1317 of the Revised Statutes of 1887, is invoked to sustain the claim of plaintiff in error to the water as a riparian owner.    His original entry of the land was made while that law was in force, but, before his final proof, it was supplemented by the statute of 1886, which expressly declared the existence of the right of prior appropriation. Section 1317 was as follows : "All persons who claim or hold a possessory right or title to any land or parcel of land within the boundaries of Wyoming Territory, when said claim is on the bank, margin, or neighborhood of any stream of water, creek, or river, shall be entitled to use the water of said stream, creek, or river, for the purpose of irrigation in making said claim available to the full extent of the soil for agricultural purposes." The contention is that this statute was sufficient to authorize Moyer to claim the water in question as riparian owner. We entertain a contrary opinion.    The statute does not recognize riparian interests.    The section quoted above purports to grant the right to the use of the water of any stream, creek, or river for the irrigation of those lands, not only lying along the bank of any such stream, but as well those which are in the neighborhood thereof. The subsequent sections of the statute of 1875, however, render it reasonably certain that no rights by that act

were accorded to riparian owners as such; but that the same privileges were granted alike to the owners of land, whether the same was situated upon the margin of a stream or otherwise. It was provided that "when any person owning claims in such locality" did not possess sufficient fall of water to irrigate his land, or his farm or land "is too far removed from said stream," and "he has no water facilities on those lands," he should be entitled to a right of way for ditch purposes through the tracts of land lying above, or below him or between him and the stream. It was further provided that whenever the volume of water in any such stream should not be sufficient to supply the continual wants of the entire country through which it passes, commissioners should be appointed to apportion the water "in a just and equitable proportion," and "with due regard to the equal rights of all." It must be apparent that if the same primary right was, under the provisions of that act, recognized or confirmed as to all lands in the locality or neighborhood of a natural stream, regardless of the fact whether or not they were upon the banks of or immediately contiguous to the stream, the matter of location alone would not have been of the slightest importance in the determination of the real or ultimate rights of the respective owners, as between themselves; but that some other factor must have entered into and determined such right. That other factor could only have been the actual use and application of the water to beneficial purposes. The requirement that the commissioners selected to apportion the water should do so "with due regard to the legal rights of all" must have meant something; some actual right was recognized, which was not possessed in any equal manner by all owners alike. So far as the mere location of the land was concerned, the right was the same, limited only in quantity, perhaps, in respect to the amount of land owned or claimed. The other and actual or more important right to be considered in the apportionment of water must have been, and in our judgment was, attached to the use and

application or appropriation of the water. This would not only have been unequal in quantity, but also as to time of appropriation; and we are of the opinion that the legal rights of all referred to were the rights secured by prior appropriation. A similar early statute in Colorado, from which our act of 1875 was evidently taken, received such a construction in that State, and it was held that it did not prevent the diversion of the water of one stream to irrigate lands lying adjacent to or in the locality of another. Coffin et al. v. Left Hand Ditch Co., 6 Col., 443. That decision, although rendered subsequently to the enactment of the law of 1875, and for that reason, perhaps, not binding upon this court, would be strongly persuasive. We are perfectly content, however, therewith. It is in accord with our own views. It is manifest that the principle recognized by the law of 1875 is the opposite of the common law rule pertaining to riparian ownership.

This disposes of the reasons urged in behalf of the title of Moyer to the water as a riparian owner. In our judgment, he possessed no rights of that character. If he had any interest in the water superior to Preston, he must have acquired it by some prior actual appropriation. To constitute an appropriation there must exist not only an intent to take the water, but that intent must be accompanied or followed by some open physical demonstration, and there must ultimately be an application to some beneficial use ; the initial act must also be followed up with reasonable diligence, and the purpose consummated without unnecessary delay in order that, by the doctrine of relation, the time of appropriation may relate back to such initial proceeding. In the case of the Mc Crea ditch, the survey was made early in August, 1886, the work of construction was prosecuted with diligence until completion, followed by an immediate application of the water to beneficial uses, which application had been continued. Moyer, on the other hand, in 1885, which was about one year prior to the commencement of the Mc Crea ditch, performed about two days'

work in cleaning out the spring on the land of Diefender-
fer and facilitating the flow of the waters thereof to the
river ; the intention which he testifies he then had to
appropriate such waters was not indicated in that year,
nor the following, by any other work except another
day's labor in 1886 again cleaning the spring.   The con-
struction of the dam and ditch, neither of which work
seems to have been extensive, which were necessary in
the application of the water to the uses intended, was not
commenced until the spring of 1887.   There was in this
respect palpably a lack of such diligence as is required
in such matters.   It is impossible by any doctrine of rela-
tion to connect the building of the dam, and excavation of
the ditch, with the work performed upon the spring in
1885 and 1886.   The appropriation of Moyer, therefore,
as to time, depends entirely upon what was done in 1887,
and his right becomes subordinate to the appropriation
made by the predecessor of Preston to which he suc-
ceeded.   Any other construction placed upon the acts of
Moyer would do great violence to the principles under-
lying the appropriation of water.

On behalf of the plaintiff in error it is further urged
that no statement of the Mc Crea ditch was filed in the
office of the clerk of the district court.   Such filing was,
alleged in the petition, all allegations of which were gener-
ally denied in the answer, and no proof of such filing was
given in evidence.   It is contended that the filing of such
statement in the office of the clerk of court was a condi-
tion precedent to an appropriation.   The legislature of
the territory, by an act approved March 11, 1886, entitled
"An act to regulate the use of water for irrigation and
for other purposes, and providing for settling the priority
of rights thereto," enacted a system for the better regu-
lation of the use of water.   The act established water
districts, and provided for the appointment of water
commissioners whose duties were defined, chief among
which was the supervision of the division of water of the
streams of their respective districts among the several

ditches taking water from the same, according to the prior rights of each respectively. Provision was then made for the adjudication of water rights, jurisdiction of courts established, and the method of procedure defined. That act also embraced certain provisions for the making and preservation of a record of all ditches and water rights, including appropriations already made, as well as those which might be made thereafter. All persons interested in water rights already existing were given until September 1, 1886, to file a statement of such rights, under oath. Such statements were required to be filed with the county clerk and the clerk of the district court. Section 13 of the act, embodied in the revision as Sec. 1343, provided in substance that thereafter every person constructing any ditch for beneficial purposes, and intending to use or appropriate any water from any natural stream for such beneficial purposes, should, before the commencement of such construction, file a statement containing various specified particulars in the office of the county clerk and clerk of the district court of the proper county ; and it was provided that "from the time of filing any such statement, water sufficient to fill such ditch or ditches, and to subserve the use or uses aforesaid, if a lawful and just use, shall be deemed and adjudged to be appropriated ; Provided, That nothing herein contained shall be permitted to interfere with a prior right to said water, or to any thereof ; and, provided further, That such person or persons or corporation shall, within sixty days next ensuing the filing of such statement, begin the actual construction of said ditch or ditches, and shall prosecute the work of construction thereof diligently and continuously to its completion ; and, provided further, That the beginning of all necessary surveys of such ditch shall be construed as the beginning of said work of construction."

A subsequent section provided that in adjudication proceedings no person should be permitted to give or offer any evidence before the court until he should have filed a statement of claim in substance the same in all respects

as is required to be filed under the provisions of the act. The contemporary construction placed upon that statute, although the question was not presented to this court, we understand to have been, that the act itself provided the penalty for the failure to file the required statements; viz., that in any adjudication of water rights evidence would not be received in behalf of any person until he had filed the statements. The object of these particular provisions was obviously the establishment and preservation of a record of water rights, which had become in many instances of great value. The section requiring such statements to be filed in the offices of the county clerk and clerk of court, was repealed in 1888, and another provision substituted providing for the filing of the statements in the office only of the county clerk, who is ex-officio register of deeds. And in 1890, when this requirement was abrogated, and the whole matter was transferred to the office of the State engineer, where the primary records were to be kept, the section of the statute of 1886, fixing the penalty for the failure to file the statements, was repealed. The law of 1890 required the clerks of court to transfer to the office of the State engineer all certificates of county surveyors as to measurements of 'ditches which had been provided for under another statute of 1886, afterward repealed, but the act of 1890 made no disposition of the statements of owners which had been filed with the clerks of court.

Under the new system, after the determination of water rights upon any stream by the Board of Control, which had been established in pursuance of a constitutional provision, a certificate from the State engineer issued as evidence of the right possessed and adjudicated in favor of an appropriator was required to be recorded in the office of the county clerk. Thus, in the development of legislation respecting the matter of records, the county clerk's office in which was and is preserved the records pertaining to the title to real estate as well as instruments affecting personal property in all cases where a record is provided for, is retained as the office of the ultimate record of water ap-

propriations, so far as concerns any county records. The idea of preserving a statement in the office of the clerk of court was early abandoned, as obviously unnecessary and subservient to no useful purpose. To file such a statement under the Acts of 1886 and 1888, no previous application for a permit to initiate and complete an appropriation was required as is the case with the later legislation.

It was the act alone of the person interested in the appropriation, and it seems evident that the more important aim, if not the entire scope of the requirements in this regard, was that of notice and record. In this view it is extremely doubtful if the filing of the statements amounted to a condition precedent to an appropriation. In the absence thereof, as against a later appropriator, without notice, and having fully complied with such provisions and made his appropriation in good faith, it may be that the latter would be entitled to a priority of right, but as that question is not involved in this case, we do not decide it. Moyer had notice of the Mc Crea ditch; and he did not comply with the statute himself. True, in September, 1891, he filed a statement apparently pursuant to the statute of 1886, in both offices, but at that time the law neither required nor authorized such a proceeding. The Mc Crea statement was filed with the county clerk in August, 1886. The provision for filing the same with another officer having been repealed in 1888, and the express penalty for the failure to initiate such a record having been repealed in 1890; and no statement of the Moyer ditch having been filed in either office, until after such repeals, we are of the opinion that as between these two ditches or appropriations, Moyer is in no position to complain of the lack of compliance by Mc Crea, the grantor of Preston, in the respect indicated.

As against one who, at least, is in no better condition, the neglect to file the statement with the clerk of court can not be held as fatal to the appropriation otherwise made in good faith. The court would have had no authority to enforce the penalty as to evidence, as at the

time the case was brought, and the trial was had, the law which had provided such penalty was not in force.

For the reasons thus set forth we are of the opinion that the judgment should be affirmed. We have deemed it advisable, under the circumstances, to dispose of this case upon its merits; but we can not entirely ignore the suggestion of counsel for defendant in error that the bill of exceptions contained in the record is not authenticated.

We are given to understand that the purpose was to bring into the record in this court the original bill, which is permissible under our statute. There is a paper forming a part of the supposed record which appears to be signed by the judge of the district court as a bill of exceptions; it is, however, devoid of any filing mark indicating that it ever came into the hands or the office of the clerk of that court. It is not authenticated by any sort of certificate of such clerk, or by the seal of the court. The signature of the judge imparts vitality to a bill, and authorizes it to form a part of the record in the cause; when it has become such, it requires the certificate of the clerk of the court, who is the custodian of the records, to properly authenticate it as either the original or a transcript thereof. How is this court to know that any paper is one of the originals filed in the cause in the court below, unless that fact is certified to by the clerk? We may recognize the signature of the judge appended to a bill by reason of the personal familiarity of one or more of the justices composing this court with such signature, but we are not in a position to conclude that the paper thus seeming to be signed by the proper judge, was ever filed or ever became a part of the record, or is in the condition it was when signed, unless the same is authenticated by the officer whose duty it is to file and preserve the same. It is needless to say that no reflections are intended in this case. We are satisfied that counsel presents a paper which he believes, and doubtless knows to be the true and correct bill as allowed by the court; but we mention the above by way of illustration. The knowledge of

counsel is not the knowledge of the court, and in 'the nature of the case can not be. Although for what we consider excellent reasons we have preferred to make a disposition of this case upon its merits, we would have been compelled to hold, if it had become essential, that the record was not properly authenticated.

*Judgment Affirmed.*

GROESBECK, C. J., and CONAWAY, J., concur.