# CHICAGO, BURLINGTON AND QUINCY RAILROAD COMPANY v. McPHILLAMEY.

## (No. 655.)

WATER AND WATER RIGHTS—IRRIGATING DITCHES—RIGHT OF WAY ACROSS PUBLIC LANDS—RAILROADS—RIGHT OF WAY—OBSTRUCTING DITCH—ACTION FOR—EVIDENCE OF APPROPRIATION—ADMISSIBILITY— NECESSITY OF RECORD EVIDENCE—HARMLESS ERROR—DAMAGES— CONFLICTING EVIDENCE.

1. In an action for damages for destroying or interfering with an irrigating ditch causing a loss of plaintiff's crops, where plaintiff was shown to have been in possession of the land irrigated by means of the ditch, and the defendant claimed no title thereto, the plaintiff was not required to prove record title, bare possession being sufficient as against the defendant, and therefore the admission of parol evidence to show plaintiff's ownership of the land was not ground for reversal.

2. Where, in an action against a railroad company for diverting or obstructing the flow of water in an irrigating ditch which crossed its right of way, the defendant was not an appropriator of water and did not claim any title or right to the water in the ditch, it was sufficient for the plaintiff to show that as early as 1889 and before the defendant acquired its right of way his grantor and he as grantee had used the ditch each season and applied the water by means thereof to a beneficial use, without proof of record evidence of a water right, for such use at that time, as against the defendant, constituted an appropriation of the water, although the appropriator had neglected to initiate record title.

3. After the construction of an irrigating ditch and the application of the water diverted thereby to a beneficial use, a railroad company acquired a right of way crossing said ditch, and so laid its tracks as to obstruct the flow of water in the ditch to the land irrigated. *Held*, in an action against the company for such interference with the ditch, that no question of priority of water rights was involved, as the company claimed no right or title to the water flowing in the ditch, and the plaintiff was not required to prove his water right by record evidence; it appearing that the water had been diverted and applied to a beneficial use as early as 1889 and each season thereafter until the company's interference with the ditch in 1907.

4. Where an irrigating ditch was constructed over and across unoccupied public lands of the United States in 1889 and was used continuously thereafter for the purposes of irrigation; *held,* that the right of way therefor across such public lands accrued and became a vested right under Sections 2339 and 2340, U. S. Rev. Stat., as against a railroad company which acquired a right of way across the lands after such construction and use of the ditch, so that the company was not in a position to dispute the water right of the ditch owner; and as the ditch owner's water right existed when the company acquired its right of way, his title to the ditch and right to its use were excepted from the government grant of the railroad right of way.

5. Where the owner of an irrigation ditch had constructed and used the same before a railroad company acquired a right of way intersecting the ditch upon public lands of the United States, the fact that after the railroad company had acquired its right of way the ditch owner took steps to obtain a statutory record of appropriation, which would give him a priority over other appropriators, did not strengthen the company's right as against the prior right of way of the ditch.

6. Where the roadbed and tracks of a railroad company were built across an irrigating ditch, and through the failure of a syphon put in by the company to carry the water in the ditch across the roadbed, the flow of water in the ditch was obstructed; *held,* in an action against the company for injury to the crops of the ditch owner caused by such obstruction of the ditch, that any error in admitting testimony that a written notice had been sent to the company's roadmaster informing him of the condition of the syphon and plaintiff's crops was immaterial, since the roadmaster testified as a witness that he had observed the condition of the syphon and notified the company thereof, and that it was afterwards repaired.

7. Where the roadbed of a railroad company was built across an irrigating ditch, and a water box was put in by the company to carry the water across its track, and afterwards the water box was replaced by a syphon which it was claimed failed to carry the water, resulting in injury to the ditch owner's crops; *held,* in an action against the company for damages for such injury: (1) That it was the duty of the company to properly construct the syphon, and whether it was properly constructed or not was upon

the conflicting evidence a question for the jury. (2) That an instruction to the effect that the employer is liable for damages caused by the wrongful act of the employee acting in the course of his employment and while pursuing the employer's business, was not objectionable on the ground that it omitted to state that the wrongful act must be within the scope of the employment, where it was shown by the testimony of the employee as a witness for the company that he worked for the company and was in charge of the gang which constructed the syphon. (3) That the company was bound by its own testimony, and there was therefore no issue as to whether the failure to properly construct the syphon was within the scope of the employment.

8. The evidence being conflicting as to the amount of damages for an injury caused by obstructing an irrigating ditch, and there being some evidence tending to sustain the amount allowed, and the trial court having held that the amount allowed was not excessive, such ruling cannot be held erroneous.

[Decided November 6, 1911.] (118 Pac. 682.)

Error to the District Court, Sheridan County; Hon. Carroll H. Parmelee, Judge.

The material facts are stated in the opinion.

*Lonabaugh & Wenzell* and *N. K. Griggs,* for plaintiff in error.

It is incompetent to prove legal title to land by parol evidence. (Bexer Co. v. Terell, (Tex.) 14 S. W. 62; Benjamin v. Shea, 83 Ia. 392; Lavery v. Brooke, 37 Ill. App. 51; Kirkpatrick v. Clark, 132 Ill. 342; Moe v. Chesrown, 54 Minn. 118; Carter v. Pitcher, 87 Hun, 580; Cox v. Ward, 107 S. C. 511; Holler v. Richard, 102 S. C. 545; Miller v. R. R. Co., 71 N. Y. 385.) The question was in issue whether the plaintiff had a water right. Parol evidence was not competent to prove such a right, for it is an interest in realty. A right of way granted by the U. S. statutes to a railroad company ceases to be a part of the public lands, and the land department is without authority to convey rights therein. (Ry. Co. v. Townsend, 190 U.

S. 267.) If the plaintiff or his grantor secured a ditch right as against defendant he had to do so under the laws in force April 6, 1893. The plaintiff had no right under the U. S. statutes of 1866. A person is not entitled to an easement over public lands for a ditch or reservoir until he has acquired a vested and accrued water right. (Nippel v. Forker, (Colo.) 56 Pac. 577.) The defendant's right became absolute April 6, 1893. Plaintiff has no easement valid as against the defendant. No such right was pleaded, but had it been, it would be without avail, because an easement cannot be granted by parol. (Pitkin v. R. R. Co., 47 Am. Dec. 320.) The plaintiff had at most but a license at the point in controversy, which was revocable at any time by the defendant. (Howes v. Barmon, (Ida.) 81 Pac. 48; Great Falls W. Co. v. R. R. Co., (Mont.) 54 Pac. 943; Hamton v. Laffee, 46 N. H. 505; Hutchens v. Shaller, 32 Mich. 496; Owen v. Field, 12 Allen, 457; Simpson v. Wright, 21 Ill. App. 67; Pitman v. Poor, 38 Me. 237; Lambe v. Manning, 171 Ill. 612; Morgan v. U. S. 14 Ct. Cl. 319; Piper. v. Brown, 43 W. Va. 412; Wynn v. Garland, 19 Ark. 23; Wilmington v. Evans, 166 Ill. 556; Johnson v. Skillman, 29 Minn. 95; Olsen v. R. R. Co., 38 Minn. 479; Wilson v. R. R. Co., (Minn.) 42 N. W. 600; Nichols v. Peck, 70 Conn. 439; 18 Ency L. 1140.) Conceding all the evidence introduced against the defendant to be true, the latter did nothing that was not within its rights, for it might, at any time, pursue any course it desired at the point of the ditch in question, and it might have permanently closed or removed the ditch. It was, however, willing to lend its aid to further irrigation purposes, and to that end it expended considerable of its own money at the crossing in question. But that act of the defendant did not render it liable to damages for not doing more in the behalf of plaintiff.

The plaintiff's petition is insufficient because it fails to allege acts on the part of his grantor or by the proper authorities creating a legal water right or ditch privilege. Several of the instructions are erroneous for the reason

that they permit a recovery without proper proof of a legal water right in the plaintiff. The 9th instruction, which declares that the employer is liable in damages caused by the wrongful act of an employee while the latter is acting in the course of employment and pursuing the business of his employer, is erroneous, for it omits the requirement that the employee must have been acting within the scope of his employment.

*C. L. Sackett,* for defendant in error.

The defendant is not in a position to question either the right of possession or the ownership of the ditch by the plaintiff. If the company were permitted to dispute the title of the plaintiff to the ditch it would work a fraud upon him, and allow the company an advantage by permitting it to recognize the plaintiff's title and afterwards escape responsibility by denying such title. The ditch was there before the railroad was there, and about four years before any rights to the land had been claimed by the company. There was abundant evidence to show that the plaintiff's title to the ditch was assented to by the company, and that the company is estopped from disputing such title. (Tynon v. Despain, 43 Pac. 1039; Miller v. Douglas, 60 Pac. 722; Dalton v. Rentaria, 15 Pac. 37; Coventon v. Seufert, 32 Pac. 508; Campbell v. West, 44 Cal. 646.) In any event the use by the plaintiff of the ditch where it crossed the railroad with the consent of the railroad company was under an oral or implied license, which under the circumstances was irrevocable. (Stoner v. Zucker, 148 Cal. 516; Brew. Co. v. Morton, 47 N. J. Eq., 158; Pierce v. Clelland, 133 Pa. St. 189; Campbell v. R. R. Co., 110 Ind. 490; Messick v. Ry. Co. 128 Ind. 81; Saucer v. Keller, 129 Ind. 475; Nowlin v. Whipple, 120 Ind. 596; Curtis v. Water Co., 20 Ore. 34; Rerick v. Kern, 14 S. & R. 267.) There is nothing in the evidence to show any intention of the company to terminate the license. Even if title was not proven by the best evidence, the error is not prejudicial. The question of title is not involved in the case, for pos-

session alone is sufficient. (Clear Creek v. Kilkenny, 5 Wyo. 38; Golden Gate &c. Co. v. Machine Works, (Cal.) 23 Pac. 45; Ry. Co. v. Walker, 12 Kan. 601; Everston v. Lutton, 5 Wend. 281; City v. Hill, (Okl.) 50 Pac. 242; Schwartz v. McQuaid, 214 Ill. 357; Blunck v. Ry. Co., 115 N. W. 1013.) · The statutory requirements for water right records are for the regulation of disputes between different appropriators. (9 Wyo. 140; 6 Wyo. 625.). A ditch and a water right may be owned separately. (Long on Irr., Sec. 74; McLear v. Hapgood, (Cal.) 24 Pac. 788; Clifford v. Larrian, (Ariz.) 11 Pac. 397; Stocker v. Kertley, (Ida.) 59 Pac. 891; Sullivan v. Min. Co., 40 Pac. 709.) The act of Congress of 1866 confers no additional rights upon an appropriator of water, but merely recognizes pre-existing rights. (Jennison v. Kirk, 98 U. S. 453; Brodie v. Water Co., 101 U. S. 274; Willey v. Decker, 11 Wyo. 469; Farm Inv. Co. v. Carpenter, 9 Wyo. 110.) And state laws, rather than declaring that water may be appropriated, recognizes the right of appropriation. (Moyer v. Preston, 6 Wyo. 38; Inv. Co. v. Carpenter, *supra;* Willey v. Decker, *supra.*)

Scott, Justice.

The defendant in error brought this action in the court below against the plaintiff in error to recover damages alleged to have been caused by the destruction or interference with his irrigating ditch after the cropping season of 1907, by the plaintiff in error so that for inability to irrigate his land he lost his crop in 1908. The case was tried to a jury which returned a verdict in favor of McPhillamey and judgment was rendered thereon. The company brings the case here on error.

McPhillamey alleged ownership in the company of a right of way for its railroad over the southern portion of the S. E. ¼ of the S. E. ¼ of Sec. 18, Tp. 57 N. of R. 84 W. He averred himself to be the owner of the 80 acres adjoining on the south, to-wit: The N. E. ¼ of the N. W. ¼ and the N. W. ¼ of the N. E. ¼ of Sec. 19. He claims

the land owned by him to have been irrigated through a ditch crossing the lands embraced in the company's right of way for more than 16 years prior to the commencement of this suit, and antedating the company's right. He avers the interference and destruction of the ditch where it crosses the right of way by the company in the latter part of 1907, and the loss of crops for the following year by reason thereof. The answer admits the corporate existence of the company, that it is the owner of the right of way and denies generally the other allegations contained in the petition.

There are 45 assignments of error of which numbers 8, 9, 10, 27, 28, 31, 34, 35, 36, 37, and 38 are abandoned in the brief and 39, 40, 41, 42, 43, 44, and 45 are general assignments which are not discussed and are covered by the conclusion reached upon the other assignments here urged.

1. Over the objection of the company McPhillamey was permitted to prove by parol evidence priority of possession and right to use the water and ownership of the ditch and land irrigated thereby. It is contended by the company that oral testimony was incompetent for that purpose as against a general denial and predicates its assignments of error 2 to 7 and 11 to 21 upon such ruling; errors number 26, 27 and 29 are predicated upon the refusal of the court to so instruct; errors number 32 and 33 are predicated upon the giving of instructions number 5 and 8, by which the jury were told in effect that they might consider such oral testimony in reaching their verdict. Each and all of the assignments of error go to the competency of the parol testimony for the purpose indicated and may be considered together.

McPhillamey testified over objection that he was the owner of the land irrigated by the ditch and had been since 1892, when he bought it from Lydia E. Slater; that she was in possession at the time he bought it and that he had occupied and farmed the land either by himself or by tenant ever since. His evidence is uncontradicted. The

action was in tort and the possession of the land by·Mc-Phillamey having been shown, the company claiming ·no· title· thereto could not put him on proof of record title. (R. &· C.· Co: v. Cook, 94 Ill. 55; 28 A. & E. Ency. L. (2nd Ed.) pages 573 and 574, and cases cited in the foot note.) The bare possession was sufficient as against the company. (Abbott, Trial Evidence, 635; Kellogg v. Valentine, 21 How. Pr. 226; 2 Greenleaf, Ev. Sec. 555; 3 Wait, Actions &·Defenses, 20-24; Waterman, Trespass, p. 346, Sec. 909; Todd v. Jackson, 26 N. J. L. 526; Roebke v. Andrews, 26 Wis. 311; McNarra v. Chicago, etc. Ry. Co., 41 Wis. 69; Spoorlock v. Port Townsend S. R. R. Co., 13 Wash. 29; Tease ·v.· City of St. Albars, et al., (Decided March 22, 1893, S. C. W. Va.) 17 S. E. 400.)

McPhillamey produced no record evidence of the water. right or· appropriation of the water or of the right of way for the ditch and the same objection was made and it is here insisted that oral testimony was not the best evidence, and. for that reason incompetent. The evidence tends to show that the ditch was constructed and the application of the· water by means thereof to agricultural purposes dated as far back as ·1889, and 'prior to the construction of the railroad by plaintiff in error's grantor, the Grand Island and Wyoming Railroad Company, which acquired its right of way from the United States on April· 6, 1893; that upon the construction of the road by the latter company it provided a culvert or water box for the ditch under its fill and across the right of way, and kept it in repair either by itself or its lessee, plaintiff in error, until July 1, 1907, when it sold the road to the plaintiff in error and that the latter continued to keep the ditch in repair in like manner until in December, 1907, it lowered the track three or four feet and below the level of the ditch, removed the water box and· placed a· syphon in lieu thereof, from ten to fifteen feet from the place where the water box had been to con-· duct the water under the track; that neither the syphon· nor the embankment leading thereto were properly con-.structed· and failed to carry the water, to the damage· of ·

the crops and herbage on the land theretofore irrigated from the ditch.

The legal sub-division upon which the ditch crossing is located was at the time of the construction of the ditch un-occupied public land, title to which was in the United States and so continued to be, with the exception of the subsequent building of the railroad until entry thereof and payment therefor as coal land on January 30, 1904, by Annie Birchey and upon which entry patent was duly issued under date of September 21, 1904.

As to the right to the use of the water, it will be observed that plaintiff in error or its grantor never claimed any title or right thereto nor was either an appropriator of water. There is no question of priorities here involved. From the evidence it appears that the water was segregated from the source of supply, impounded in and flowed down the ditch unobstructed and in sufficient quantity to irrigate the land during the year in question, *viz:* 1908, and would have done so but for the failure of the syphon to carry it across the company's track. The company by its failure to provide a proper conduit across its track diverted the water so impounded from the ditch. Shaw v. Proffitt (S. C. Ore., June 14, 1910) 109 Pac. Rep. 584, was an action to quiet title to an irrigating ditch built by plaintiff across defendant's land in pursuance of an irrevocable license. The defendant admitted that for four or five years prior to 1908 he cut the ditch and diverted the water to his own use without the consent and against the plaintiff's objection. The court say: "Plaintiff's title to the water flowing in the ditch could not be, and was not disputed by the defendant, although the right to maintain the ditch might have been, for the water had been segregated by plaintiff from the general supply, was impounded in his ditch, and was intended to be appropriated to his own use. It had been under his control and was his property."

In Moyer v. Preston, 6 Wyo. 308, 325, 44 Pac. 845, 71 A. S. R. 914, both parties claimed the right to the use of water. The law then in force was the act of the territorial

legislature, approved March 11, 1886, which with a few changes not material to the question here involved remained in force until 1890, when the whole subject of initiation of water rights was transferred to the state engineer and board of control under regulations prescribed by the later act. The rights of the parties were of necessity determined under the law in force at the time they claimed to have initiated their rights. Preston claimed his right through his grantor, McCrea, who filed his statement of water right in the office of the county clerk in August, 1886, as the law required, but failed to file a duplicate thereof in the office of the clerk of the district court, which the law also required. The latter requirement was repealed in 1888. Moyer did not file his statement in either office until in September, 1891, after the law of 1886 had been repealed, and at which time the initiation of a water right and record thereof was required to be made by application to the state engineer under the act of 1890. Moyer contended that McCrea having failed to record his certificate of claim to the water right in the office of the clerk of the district court as the law required at the time but which law, as already stated, was afterward repealed, that there was a failure to show an appropriation of the water. This court held that as Moyer had failed to comply with the law, he was in no position to complain of the lack of compliance by McCrea, the grantor of Preston, in the respect indicated. It is there said: "As against one who, at least is in no better condition, the neglect to file the statement with the clerk of court can not be held as fatal to the appropriation otherwise made in good faith." It was during the time that law was in force, viz: in 1889, and long prior to any claim of title to the right of way by the company that McPhillamey's grantor and he as grantee used the ditch each season and applied the water by means thereof to a beneficial use. Their good faith is not questioned. It was then an appropriation of the water which the company could not dispute either at that time or since and that being so it constituted an appropriation of the water for all purposes as to it even though

McPhillamey's grantor and he had neglected to initiate record title to the water right. The right to use the water would be so recognized as against one not entitled to dispute it and was so held in Moyer v. Preston, *supra*. As against the company, it was for all purposes a valid appropriation— an accrued right to the use of the water.

Upon the facts the right of way for the ditch over and across the land accrued as against the company by virtue of the following sections of the United States Revised Statutes, *viz:* Sec. 2339, enacted in 1866, and Sec. 2340, supplementary thereto, enacted in 1870.

"Sec. 2339. Whenever, by priority of possession, rights to the use of water for mining, agricultural, manufacturing, or other purposes, have vested and accrued, and the same are recognized and acknowledged by the local customs, laws, and the decisions of courts, the possessors and owners of such vested rights shall be maintained and protected in the same way; and the right of way for the construction of ditches and canals for the purposes herein specified is acknowledged and confirmed; but whenever any person, in the construction of any ditch or canal, injures or damages the possession of any settler on the public domain, the party committing such injury or damage shall be liable to the party injured for such injury or damage."

"Sec. 2340. All patents granted, or pre-emption or homesteads allowed, shall be subject to any vested and accrued water rights, or rights to ditches and reservoirs used in connection with such water rights, as may have been acquired under or recognized by the preceding section."

In the case before us the ditch having been constructed and in actual use over and across the S. E. ¼ of the S. E. ¼ of section 18, while it was unoccupied public land of the United States, and used continually thenceforth as a conduit, must, we think, be held to be a vested right within the provisions of Secs. 2339 and 2340, *supra*, as against one who is not in a position to dispute the water right and deraigns title by grant from the government thereafter. In Broder v. Natrona Water & M. Co., 101 U. S.

274, it was held that the owners of a ditch located on public
land and in actual use will be protected against subsequent
entrymen. · There are numerous decisions to the effect that
if an appropriator is first in time with reference to pos-
session and use as compared with the date an entry is made
that the rights of the entryman are junior and inferior.
(Brosman v. Harris, 39 Or. 148, 87 Am. St. Rep. 649, 65
Pac. 867, 54 L. R. A. 628; Smith v. Hawkins, 110 Cal.
122, 42 Pac. 453; Moffett v. Quinn, 93 Fed. 347, 95 Fed.
199; De Necochea v. Curtis, 80 Cal. 333; Cottonwood
Ditch Co. v. Thom, 39 Mont. 115, 101 Pac. Rep. 825.). In
Wiel on Water Rights, (3rd Ed.) Sec. 257, it is said:
"A grant of land from the United States remains subject
to prior appropriators of water rights or prior rights to
ditches. * * * No matter what the character of the later
land grant, it is not divested of prior rights of appropriation
of water, or rights to ditches acquired while the land was
public." There are numerous authorities cited in the foot
notes in support of the text and none can be found to the
contrary except Van Sickle v. Haines, 7 Nev. 249, which
was overruled in Barnes v. Sabron, 10 Nev. 217, and the
ruling in the last case is followed in Shoemaker v. Hatch,
13 Nev. 261; Hobart v. Wicks, 15 Nev. 261; Jones v.
Adams, 19 Nev. 78, 3 Am. St. Rep. 788, 6 Pac. 442. In
Watchumna Water Co. v. Pogue, 151 Cal. 105, 90 Pac.
362, there was a question of priority to a water right. The
court say: "As to the plaintiff's title, it is indisputable that
the Watchumna ditch was constructed over vacant govern-
ment land prior to the time that Pogue acquired any of
his rights either as an appropriator or as an owner of
riparian lands, and, consequently, upon well settled princi-
ples, the plaintiff's earlier rights of appropriation are su-
perior to Pogue's later rights either as an appropriator or
as riparian land owner." We do not deem it necessary
to continue this discussion further than to quote from Wiel,
supra, Sec. 257, as follows: "Today a public land diversion
is in all jurisdictions a vested right which is protected
whether the later land patent was issued before or after

1866, and whether it does or does not contain a clause reserving accrued water rights." The approval of the application of the railroad for a right of way appears by indorsement upon the plat with accompanying field notes of the survey and operated as a grant. The approval is as follows: "Department of the Interior, April 6th, 1893, subject to all valid existing rights. (Signed) George C. Chandler, Acting Secretary." It will be noticed that the approval excepts existing rights as against the railroad. For the reasons already stated, McPhillamey's water right had accrued and constituted an existing right as against the railroad at that time, and it must follow that his title to the ditch and right to its use was excepted from the grant to the railroad of its right of way. The railroad company so recognized his title and assumed the duty imposed upon it of protecting the ditch, for the evidence is undisputed that when plaintiff in error's grantor constructed the road it put in a water box to carry the water flowing in the ditch and its successor, plaintiff in error here, maintained it up to the time of the acts complained of.

The right to use the ditch was a valuable right and by the acts of the company McPhillamey was invited to use it and while he offered no evidence of record title to the water right, yet we think there is sufficient evidence in the bill to show that he had made a statutory appropriation of water prior to the acts complained of.

On cross-examination McPhillamey testified that there were 300 shares of the Tongue River Ditch Company through which he got his water prior to and since the time when he enlarged his ditch, and that after the enlargement of the ditch there were 330, the last 30 shares being his, and that all the other owners of the shares of water stock were entitled to their water prior to his right. That the Tongue River Ditch Company constructed their ditch in 1885. That he had a certificate of appropriation evidencing the right to use the water from Tongue River by enlargement of the company's ditch, which was on file in the office of the state engineer, and that this appropriation dated

May 8, 1906. The evident purpose of this examination was to postpone McPhillamey's right to use the water to a time after the company's right of way was acquired. One of the attorneys for the company testified as a witness to the effect that he was entirely familiar with the relations of the plaintiff in error with the Grand Island and Northern Railroad Company, and that the latter conveyed to and the former took possession and began operating the road as owner and proprietor on July 1, 1907, and that prior to that time it held it by lease and various other ways. The company upon the evidence both as lessee and as owner recognized the right to use the ditch prior to and subsequent to the appropriation of May, 1906. The ditch was built in contemplation of appropriating the water, completed, and the water turned into it, and McPhillamey was in the peaceable enjoyment of a vested right as against the company and the latter's title was not strengthened if during the occupancy and use of the ditch McPhillamey took steps to obtain a statutory appropriation which would give him a priority over subsequent appropriators.

2. The witness Hayes testified on behalf of McPhillamey and was permitted over objection to testify to the contents of a postal card which he stated he sent to the company's roadmaster notifying him of the condition of the syphon and the crops and the necessity for repairs to the syphon. The evidence tends to show that the witness had charge of the ditch and the land at the time and that the roadmaster lived and had his office at Sheridan, on the line of the road; that the postal card was properly addressed, mailed and never returned. Demand for its production was made upon the company at the trial, but the latter failed to produce it. Thereupon the witness, over objection, was permitted to testify to its contents as follows: "Q. You may tell the jury what was written upon this postal card. Answer. Well, sir, I don't know as I could answer it just the same as I wrote it on the card, or not; but I wrote to him and told him that the ditch above Monarch, and gave him the number of the railroad bridge,

that the ditch between the tracks was in bad condition, and that they could not get the water across and the crop was being burned up, or were burned up and I would like to have him send somebody out to fix it." The company then moved to strike out the answer as incompetent, hearsay and inadmissible, which motion was overruled and exception noted. The company predicates its assignment of error number 22 upon this ruling. It is unnecessary to discuss the question as to whether this ruling constituted prejudicial error or error at all, for the reason that the company placed the roadmaster upon the witness stand and although he denied ever receiving the postal card, he testified that he saw the syphon several times in 1908 and about May 20 he saw the syphon and observed a seepage around the north end of the track which would have softened the road, and in accordance with his duty reported the condition to the company's superintendent and asked him to have it repaired. On the 26th of May following he saw the syphon again and it had been repaired. The object of the postal card was to notify the company of the necessity for repairs, and the company by its own evidence through its employee had notice of the condition and acted thereon for there is evidence showing that the repairs were made at that time by its section crew.

3. The plaintiff in error offered in evidence the certificate of incorporation of the Tongue River Ditch Company. It was objected to and the court sustained the objection. Plaintiff in error's 24th assignment of error is predicated upon this ruling. For the reasons already stated, plaintiff in error was not in a position to dispute McPhillamey's title or right to use the water impounded in his ditch and it follows that the court properly sustained the objection.

4. We do not understand that there is any complaint as to the right of the company, owing to the necessities of the case, to change the place of the ditch crossing so long as such change did not interfere with the water in sufficient quantity reaching its destination. The syphon was in lieu

of the water box and to avoid damage to the plaintiff it should have been properly constructed. As to whether or not it was properly constructed the evidence was conflicting and the jury by its verdict found against the company.

5. The assignment of error number 33 is predicated upon the giving of instruction number 9 over the company's objection. By this instruction the jury were told that the employer is liable for damages resulting from the wrongful act of the employee while the latter is acting in the course of his employment and while pursuing the business of his employer. It is here objected that the instruction omits to state that the alleged wrongful act must be within the scope of the employment. The company proved by its own witness, P. L. Mapes, that he worked for the company and was in charge of the concrete gang which constructed the syphon in December, 1907. The company is bound by its own testimony and it follows that there is no issue upon the evidence as to whether the failure to properly construct the syphon was within the scope of Mapes' employment. There was, therefore, no prejudicial error in the instruction.

6. Assignments of error numbered 23 and 25 are predicated on the denial of the company's motion, when plaintiff rested his case, for a directed verdict upon the ground of failure of proof. We think there was sufficient proof at that time for the case to be submitted to the jury and that the court properly denied the motion.

7. It is urged that the damages are excessive. Upon this question the evidence is conflicting, there being some evidence tending to sustain the amount allowed, and the lower court heard the evidence and ruled adversely to the company's contention. Upon this state of the record this court can not say that the lower court's ruling was erroneous.

We find no prejudicial error in the record and the judgment will be affirmed.

*Affirmed.*

Beard, C. J., and Potter, J., concur.