## WYOMING HEREFORD RANCH v. HAMMOND PACKING CO., ET AL.*

### (No. 1205, May 19, 1925; 236 Pac. 764)

WATER RIGHTS—ABANDONMENT—TERRITORIAL DECREE—FINDINGS—COURTS—JURISDICTION OF ABANDONMENT CONTROVERSIES—BOARD OF CONTROL—WATER RIGHT DEFINED—STATE PERMIT TO APPROPRIATE—MUNICIPAL CORPORATIONS—CONTRACTS—SEWER DISPOSAL—SURPLUS WATERS—APPEAL & ERROR—PARTIES TO APPEAL—MOTION TO DISMISS.

1. A fundamental principle underlying the irrigation laws is that all available water supply should be used beneficially as far as possible.
2. The general principle that a water right may be lost by abandonment, applies alike to rights acquired prior to statehood and rights acquired thereafter.
3. Where ditches of water appropriator had for many years been abandoned and useless, and subsequently he applied and acquired new permits, evidence *held* to sustain finding of non-user for more than statutory period, together with an intention to abandon appropriation rights.
4. Comp. St. 1920, §§ 853-858, providing for declaration of abandonment of water rights before board of control, *held* not to divest district court from jurisdiction of an issue of abandonment in action properly before it; there being no express legislative intention to do so.

5. By Comp. St. 1920, § 832, a "water right" is defined as a right to use the water of the state when such use has been acquired by the beneficial application of water under the laws of the state relating thereto and in conformity with rules and regulations dependent thereon.

6. In Wyoming no appropriation of water can be made until an application for a permit has been made to the State Engineer, and approved as provided by Sections 835-842, Comp. Stats. 1920.

7. A water right acquired under a Territorial Court Decree in 1888 and thereafter used to irrigate a certain area of land, but extended by ditch enlargement to irrigate a greater area prior to the enactment of a law in 1890 requiring a State permit as a condition precedent to a valid appropriation held, to establish a priority of use for the increased area in absence of an issue of abandonment.

8. In an action to establish a forfeiture of water rights claimed by defendant, on the ground of abandonment held, that the decree should not be made to affect any of defendant's claimed appropriations having a priority later than those established by plaintiff.

9. A plaintiff seeking a decree of forfeiture of defendant's water rights, not suing as a citizen or taxpayer, is without right to attack a contract between defendant and a municipality granting defendant a right to use water emptied from its sewers.

10. A contract between defendant and a municipality purporting to grant defendant a right to divert from a public stream, water emptied into it from city sewers, may be questioned and adjudicated in an action against defendant by another appropriator on the stream involving a priority of appropriations.

11. In view of great problem and necessity of disposing of city sewage, a municipal contract for discharge on another's land, granting owner thereof exclusive use, would be upheld as against claim that, as soon as sewage became surplusage and waste water and started on return to stream from which it had been previously diverted, it became part of public waters.

12. Appropriated waters, when used to full extent intended by appropriation, unconsumed surplusage returned to stream, is a part of the waters of the state.

13. In proceeding to determine appropriation priorities, that part of municipal contract purporting to grant exclusive

right to divert sewage from stream to which it had been returned could not be sustained; such surplus waters again becoming part of the waters of the state.

14. Alleged errors as to admission of evidence and refusal to strike portions of the petition will not be considered, where under the law controlling the merits, the result could not have been changed by different rulings.

15. In suit to determine appropriation priorities, where issue was disposal of discharged sewage waters which city had purported to contract to a defendant, city *held* not necessary party to appeal, as question could have been determined without bringing it into case, and therefore motion to dismiss could properly be denied.

*NOTE—See Headnotes—(1) 40 Cyc. p. 725; (2) 40 Cyc. p. 725; (3) 40 Cyc. pp. 726, 727; (4) 40 Cyc. p. 730 (1926 Anno) (5) 40 Cyc. p. 540; (6) 40 Cyc. p. 713; (7) 40 Cyc. p. 731; (8) 4 C. J. p. 649; (9) 40 Cyc. p. 730; (10) 40 Cyc. p. 730; (11) 28 Cyc. p. 922 (1926 Anno.); (12) 40 Cyc. p. 717; (1926 Anno.) (13) 28 Cyc. p. 922 (1926 Anno) (14) 4 C. J. p. 651; (15) 3 C. J. p. 1018.

APPEAL from District Court, Laramie County; WILLIAM A. RINER, Judge.

Action by Wyoming Hereford Ranch, a corporation, against Hammond Packing Company, the City of Cheyenne and others involving an issue of abandonment of water appropriations and relative priorities to the use of water from Crow Creek, and also a certain contract existing between the City and the packing company for the disposal of the city's sewage. Pending appeal the packing company was adjudged a bankrupt, and was represented by its Trustee. Other material facts are stated in the opinion. See also 31 Wyo. 31; 222 Pac. 1027.

*William C. Mentzer* and *William E. Mullen* for appellant and Trustee in Bankruptcy.

Respondent's claim to priorities 5 and 19 under the decree of 1888, and its various other claims of appropriations, have not been used continuously and adversely to appellants; appellant claims priority under the decree of 1888 for 1060 acres; its additional appropriations are claimed under certificates from the Board of Control. Appellant's

claims are predicated upon natural flow with additions from sewage and waste water; its rights were initiated under Territorial and State laws; it also claims under its contract with the City of Cheyenne of January 3rd, 1922 for sewage and waste water.    Respondents' charge of abandonment was not sustained by the evidence.    Intention is the essence of abandonment; Hall v. Lincoln, (Colo.) 50 Pac. 1047; mere non-user is insufficient to establish abandonment, New Merc. Co. v. Armstrong, (Colo.) 40 Pac. 889; White v. Nuckolls, (Colo.) 112 Pac. 328; Farnham Sec. 691; Miller v. Wheeler, (Wash.) 43, L. R. A. N. S. 1065; the burden is upon one asserting abandonment; Platte Valley Co. v. Co., 75 Pac. 391; mere declarations do not constitute abandonment, Ditch Co. v. Frantz, (Colo.) 129 Pac. 1006; Perry v. Calkins, (Cal.) 113 Pac. 136; the Constitution Art. VIII. Sec. 1-5 places the supervision of water rights under an Engineer and State Board of Control; our legislation 832, 852, 858 C. S. carries out this intention; no appropriation of water can be lawfully initiated without a permit from the State; respondent's claim to an appropriation through the Bolin ditch has no standing.    The City of Cheyenne owns the first right on the stream and has lawful authority to dispose of its surplus water; Kinney on Irrigation, (2nd. Ed.) 846, 773, 774; Spring Valley v. Schottler, 110 U. S. 347; Holt v. Cheyenne, 22 Wyo. 231 and to change its place of diversion; Johnston v. Irrigation Co., 13 Wyo. 208; Holt v. Cheyenne, supra; Edwards v. Cheyenne, 19 Wyo. 110; Canal Co. v. Irri. Co., 70 Wis. 635; and to provide for sewage disposal; Ditch Co. v. Trinidad, (Colo.) 203 Pac. 681 is not in point on the facts.    Respondent could not acquire a prescriptive right through the Bolin and Stewart ditches by a violation of the constitution and laws of the State; Watts v. Spencer, 940 Pac. 39; Land Co. v. Cowell, (Cal.) 106 Pac. 675; Smith v. Smith, (Ore.) 135 Pac. 876; as against the appellant who complied therewith, Talbot v. Co., (Mont.) 73 Pac. 111; Smith v. Duff, (Mont.) 102 Pac. 981; a prescriptive right cannot be gained by diversion at

a point below; Miller v. Co., (Cal.) 147 Pac. 567; Turner
v. Co., (Cal.) 147 Pac. 579; nor without depriving an ad-
verse claimant of use; Boynton v. Longley, (Nev.) 6 Pac.
437; Co. v. Hancock, (Cal.) 24 Pac. 645; Kinney 293; the
enlargement of the Bolin, Stewart and Kingham ditches and
the irrigation of an increased area of land since statehood,
is unwarranted, either by the Territorial decree or State
laws. The doctrine, that appropriations may be established
by user, ignoring State laws, does not obtain in this State.
A prescriptive right will not attach to waste waters, Kin-
ney 1043; Cordelli v. Co., (Nev.) 66 Pac. 950; Hunt v.
Laramie, (Wyo.) 181 Pac. 137; Ide v. U. S. (Unreported; de-
cided Jan. 27, 24). Vested rights are not affected by sub-
sequent legislation, C. B. & Q. R. R. Co. v. McPhillamey,
(Wyo.) 118 Pac. 682; Farm Investment Co. v. Carpenter,
9 Wyo. 111; a Court action for abandonment cannot be
maintained on a mere finding of non-user for the statutory
period, in the absence of showing of intent. It is clearly in-
tended by our Constitution and laws that water supervision,
including proceedings for abandonment, should be initiated
before the Board of Control subject to appeal to the Courts.

*Kinkead, Ellery & Henderson* for respondents.

The statutes commencing with Chap. 55, Laws of 1888
provided for abandonment by non-user and have remained
unchanged, except an extension of time by subsequent
amendments; similar statutes have been construed in Lind-
blom v. Co., (Cal.) 173 Pac. 994; Smith v. Hawkins, (Cal.)
42 Pac. 453; In Re waters of Umatilla, (Ore.) 168 Pac. 923;
Kinney Sec. 1118; Joyce v. Co., (Ida.) 208 Pac. 241; Wimer
v. Simmons, (Ore.) 39 Pac. 6; adversely to appellant's con-
tentions, the law applies to Territorial rights; Worland v.
Davis, 223 Pac. 226; the evidence shows intent to abandon;
Kinney 1849, 1855; Anaheim Co. v. Ashcroft, (Cal.) 94
Pac. 613; State v. Quantic, (Mont.) 94 Pac. 491; Power v.
Flood, (Cal.) 199 Pac. 315; Territorial rights are con-
trolled by the Constitution and laws, Art. 8 Sec. I; Willy

v. Decker, 11 Wyo. 496; Moyer v. Preston, 6 Wyo. 308;
Farm Inv. Co. v. Carpenter, 9 Wyo. 110; Burgman v. Kear-
ney, 241 Fed. 884; Milling Co. v. Irri. Co., (Colo.) 156 Pac.
140; Kersenbrock v. Boyes, (Nebr.) 145 N. W. 837; water
belongs to the State, Sec. 8 Comp. Stats.; municipal cor-
porations may appropriate; Art. 13, Sec. I., Const.; a water
right is defined by 832-833 C. S.; storage rights are defined
by 804-870 C. S.  The appropriator acquires a right to use,
Cleary v. Daniels, (Utah) 167 Pac. 820; with a somewhat
enlarged privilege of disposing of stored waters; Kinney
773-846; Copeland v. Co., (Cal.) 131 Pac. 119; Gunnison
Co. v. Co., (Utah) 174 Pac. 852; Sherred v. City, (Ore.)
125 Pac. 826; Schlosser v. Co., (Ariz.) 65 Pac. 332; Prosole
v. Co., 140 Pac. 720.  A city has no authority to sell puri-
fied sewage; Pulaski Co. v. City, (Colo.) 203 Pac. 681; the
authorities are, however, in conflict as to the dominion and
ownership of stored waters; Kinney 1150, 1367; Fort Mor-
gan Co. v. McCune, (Colo.) 206 Pac. 393; Kinney 907-661;
Comstock v. Ramsey, (Colo.) 133 Pac. 1107; Rio Grande
Co. v. Co., (Colo.) 191 Pac. 129; Creek v. Co., (Mont.) 38
Pac. 458; Manning v. Fife, (Utah) 54 Pac. 111; flood,
storm and waste water belong to the stream of which they
are tributaries; Kinney 653, Long on Irrigation 234; Mid-
way Co. v. Co., 67 Fed. 423; the Edward and Holt cases do
not support the city's contract; it could not contract away
its police power; Ry. Co. v. City, 52 L. ed. 630; City v.
Roemer, 141 N. W. 250; Hamilton v. City, 33 N. E. 1007;
it is void in attempting to grant an exclusive right; 1830
C. S. Cas. Co. v. City, 52 L. Ed. 257; Miller v. Ammon, 36
L. ed. 759; People v. Board, 122 Ill. App. 40; Norbeck v.
State, 142 N. W. 847; Ellis v. Batson, (Ala.) 58 So. 193;
it purports to create a perpetual right, and is therefore void,
City v. Water Works Co., (Ore.) 181 Pac. 864; State v.
Co., (Minn.) 83 N. W. 32; it is void in attempting to confer
a right on appellant to divert this sewer water from Crow
Creek; Comstock v. Ramsey, 133 Pac. 1107; Reservoir Co.
v. Co., 191 Pac. 129; application for a permit is not an es-

sential basis for a water right. Nothing may be found in
our Constitution or laws making a permit a condition prece-
dent to a lawful appropriation, nor defining the term "Ap-
propriation." Appropriation by diversion and actual use
confers the right; Moyer v. Preston, 6 Wyo. 308; Invest-
ment Co. v. Carpenter, supra; Willey v. Decker, supra;
Morris v. Bean, 146 Fed. 423; Beers v. Sharp, 85 Pac. 717;
Kinney 1216; Laws 1919, Chap. 18; an appropriation may
be acquired without application for a permit; Kinney 2460;
Secs. 3252-54 Rev. Codes of Idaho. The Idaho laws are
largely based on Wyoming statutes; Nelson v. Parker,
(Ida.) 115 Pac. 488; see also Power Co. v. Irrigation Co.,
(Idaho) 133 Pac. 655; Sugar Co. v. Goodrich, 147 Pac.
1073; Reno v. Richards, (Ida.) 178 Pac. 81; methods of ap-
propriation are not exclusive; Farmers Co. v. Co., (N. M.)
213 Pac. 202; Haight v. Constanich, (Cal.) 194 Pac. 26;
Kendall v. Joyce, (Wash.) 93 Pac. 1091; Patterson v. Ryan,
(Utah) 108 Pac. 1118; Sowards v. Meagher, (Utah) 108
Pac. 1112. The evidence established a prescriptive right
under the Bolin ditch. The decree of 1888 did not pre-
scribe acreage nor attach the right to any particular lands.
Appellant had no water rights prior to 1909, and it cannot
question rights acquired by respondent prior thereto;
Schwartz v. King, (Colo.) 172 Pac. 1054; errors alleged in
refusing to strike portions of the petition or rulings on ad-
missions or exclusion of evidence were not prejudicial, 4 C.
J. 804; if the city is a necessary party the appeal should be
dismissed, 3 C. J. 1216; Lidfors v. Pflaum, (Ore.) 205 Pac.
277.

KIMBALL, Justice.

This action involves rights to the use of the waters of
Crow Creek, a stream rising west of the City of Cheyenne,
and flowing in a general easterly direction through that
City and through lands owned by the Hammond Packing
Company and the Wyoming Hereford Ranch. The plain-
tiff, the Wyoming Hereford Ranch, and the defendant,

the Hammond Packing Company, are appropriators of the waters of said Creek for the purpose of irrigation. The City of Cheyenne, another defendant, is also an appropriator of said waters to which it is conceded to have the first right. The city's only connection with the case grows out of its contract with the Packing Company for the disposal of the city's sewage. See, this case on motion to dismiss appeal, 222 Pac. 1027. Other defendants were, at the time of the commencement of the action, tenants of the Packing Company, and their rights need not receive any separate attention. Hereafter we shall refer to the Ranch Company as the plaintiff and to the Packing Company as the defendant. The judgment of the District Court was for the plaintiff and the defendant appeals.

Before statehood, in the year of 1888, an adjudication of the priorities of the rights of parties appropriating the waters of Crow Creek was made by the District Court of Laramie county, and the validity of that decree is admitted by all parties. Under that decree, the plaintiff claims priority No. 5 for the irrigation of 140 acres, and priority No. 19 for the irrigation of 400 acres. The defendant claims under said decree priority No. 2 for the irrigation of 100 acres, No. 13 for the irrigation of 200 acres, No. 33 for the irrigation of 500 acres, No. 39 for the irrigation of 5000 (sic) acres, and No. 51 for the irrigation of 260 acres.

The District Court found in this action that the rights of defendant's grantors under the decree of 1888 (except an appropriation made by means of the Gordon or Granger ditch) have long since been forfeited and abandoned by and through non-user. In challenging this finding, the defendant raises several questions of which we will consider, first, the contention that the rights acquired by the defendant's predecessors in interest before the adoption of the constitution were vested rights that could not be affected or taken away from the owner by the operation of the constitution and subsequent legislation. We may readily concede that the rights established by the decree

of 1888, were valuable property rights, but we think it
does not follow that they could not be lost by non-user
and abandonment. In Farm Investment Co. v. Carpenter,
9 Wyo. 110, 139, 61 Pac. 258, 259, 50 L. R. A. 747, 87 Am.
St. Rep. 918, after stating that the constitutional declara-
tion that waters were the property of the state, was not
intended to interfere with previously acquired rights to
use the public waters of the state, this court said:

"It was, however, by all the constitutional expressions,
undoubtedly intended that such rights, and all appropria-
tions, should be regulated upon the basic principles there-
in enunciated. That the constitutional provision did not
impair rights already accrued, is apparent not only from
the accompanying provisions, but from the nature of such
rights. Although an appropriator secures a right, which
has been held with good reason to amount to a property
right, he does not acquire a title to the running waters
themselves, except, it may be, to such quantity as shall
from time to time have been lawfully diverted, and after
diversion may be running in his ditch or lateral. The title
of the appropriator fastens not upon the water while
flowing along its natural channel, but to the use of a lim-
ited amount thereof for beneficial purposes, in pursuance
of an appropriation lawfully made and continued."

And on page 140, 61 Pac. 266, it was said further:

"All rights acquired by appropriation partake of the
same general characteristics, differing essentially only in
priority and quantity, and possibly in purpose."

A fundamental principle underlying the irrigation laws
is that all the available water supply should be used as
far as that is possible. Kinney on Irrigation (2nd ed.)
Sec. 1118. As indicated in Farm Investment Co. v. Car-
penter, supra, the right depends upon an appropriation
"lawfully made and continued."

In Territorial days, it was provided by Section 14 of Chapter 55, of the Laws of 1888, that the owner of any ditch who should fail to use the water therefrom for some beneficial purpose during any two successive years, should be considered as having abandoned the same, and this law seems to have continued as the law of the state until 1905 (Ch. 39, Laws of 1905), when the period was lengthened to 5 years. Thus we find that the policy of requiring a continued beneficial use was announced by legislation of the Territory.

The general principle that a water right may be lost by abandonment is well settled and not questioned by counsel. See Kinney, supra, Ch. 56. The contention that a right acquired before the admission of the state differs in this respect from one acquired later cannot be sustained. Ft. Collins Milling & E. Co. vs. Larimer & Weld Irr. Co., 61 Colo. 45, 156 Pac. 140; Bergman v. Kearney, (D. C.) 241 Fed. 884.

It is further contended that, before a water right can be forfeited, there must be proof not only of non-user for the statutory period, but also of a concurring intention to abandon the right; that the evidence fails to meet this test, and is therefore insufficient to support the decree of forfeiture. For the present we shall assume that non-user for the statutory period would not be sufficient ground for declaring a forfeiture of the right unless from all the evidence in the case, including the evidence of non-user, the trial court would be justified in drawing the inference of an intention to abandon the right. The evidence on the issue of non-user was conflicting, and we think the trial court was justified in finding against the defendant on that issue. If the testimony of the witnesses for the plaintiff be taken as true, the defendant and its predecessors in interest had failed to use any of the rights declared forfeited for a period much longer than that mentioned in the statute, and had permitted its ditches to become filled and grown up with grass and brush until they had become

useless and almost obliterated. There was evidence that this condition continued for much more than 5 successive years, until about the year 1909. In that year two applications were made for permission to divert waters of Crow Creek for the irrigation of lands now belonging to the defendant. In 1911 another similar application was made. These applications were approved by the State Engineer, and the ditches described therein constructed and used for the irrigation of lands belonging to the defendant. Later in the year 1911 an application was made and approved for the enlargement and extension of one of the ditches described in one of the permits of 1909. We understand that it is admitted that the lands described in these four applications as irrigable from the proposed ditches are practically the same lands formerly irrigated under the rights adjudicated by the decree of 1888, and declared forfeited by the decree in the present case. The applications, when approved, became ''permits'' under the state laws presently to be noticed.

In applying for permits in 1909 and 1911 there appears to have been no claim of earlier water rights though it must have been understood that the rights to be acquired by appropriation pursuant to the permits would take priority only from the date of the filing of the applications with the State Engineer. The defendant now claims, however, that construction work and diversion of water under the permits was a continuance of the use of the old ditches that had been used in connection with the water rights adjudicated by the decree of 1888 and declared forfeited in this case. On the other hand, the plaintiff claims that at the time the permits were applied for and granted, the old ditches had for many years been abandoned and useless; that the diversion and appropriation of water under the permits required new works, including practically new ditches, and that the purpose of the work under the permits was to acquire new rights in place of the old rights that had been abandoned. Under the evidence on this

point, we think the trial court was warranted in finding that the plaintiff's contention was true and that the permits were obtained because the defendant and its grantors recognized the fact that rights under the decree of 1888 to irrigate the lands covered by the permits had been abandoned.

There was evidence that Mr. J. W. Hammond, representing the defendant, appeared before the State Board of Control in the year 1917, when that Board was having a hearing respecting the rights of the appropriators of the waters of Crow Creek, and that he then stated in effect that the defendant did not then claim any water rights under the Territorial laws, and that he was present at the hearing for the purpose of seeing that others who were claiming such rights would not be successful.

In consideration of all the facts and circumstances, we think the trial court was justified in finding not only that there was a non-user for more than the statutory period of the rights in question, but that such non-user was accompanied by an intention to abandon the rights. It is unnecessary to say whether under the statute a forfeiture may be decreed upon evidence showing non-user for the statutory period where the circumstances would not justify a finding of an intention to abandon the right.

Sections 853 to 858 of the Wyo. C. S. 1920, provide for a declaration of abandonment of a water right in a proceeding before the Board of Control. The defendant claims that the proceeding so provided for is the only method of determining that question, and, therefore, that the court had no jurisdiction to decide the issue of abandonment and forfeiture in the present action. This point was mentioned, but left undecided, in Bamforth vs. Imsen, 28 Wyo. 282, 314, 204 Pac. 345, 205 Pac. 1004. The plaintiff not only contends that the remedy under the statutes just mentioned is not intended to deprive the courts of jurisdiction but also suggests that the statutes purporting to confer such authority on the Board of Con-

trol are unconstitutional. The suggested constitutional question need not be decided. Assuming that the statutes are constitutional, we think they were not intended to provide an exclusive remedy. The statutes in question were passed in 1913 as Chapter 106 of the laws of that year. Some law providing for the forfeiture and abandonment of water rights had then been in effect in the Territory and State for twenty-five years, as already mentioned. From 1888 to 1913 it would seem clear that the courts were authorized to decide questions of abandonment, and we see in the Act of 1913 no expression of a legislative intention to prevent the courts from continuing to exercise that jurisdiction in proper cases. In Farm Investment Co. v. Carpenter, supra, at page 150 of 9 Wyo. 61 Pac. 269, the court then having under consideration the statutes providing for an adjudication of priorities of water rights by the Board of Control, it was said:

"The district court is, by the constitution, vested with original jurisdiction both at law and in equity. The jurisdiction of equity to entertain suits for quieting title to the use of water is well settled. The Legislature has not attempted to divest the courts of that jurisdiction, and we do not think it could successfully do so. Although in the statutory proceeding for the determination of water rights, the courts obtain jurisdiction only by way of appeal from the decisions of the Board of Control; all the ordinary remedies known to the law pertinent to the use and appropriation of water, are open to all interested in such rights, equally with all other persons in respect to any other kind of right or property. The courts possess ample jurisdiction to redress grievances growing out of conflicting interests in the use of the public waters, and to afford appropriate relief in such cases. Nothing can be plainer, it seems to us, than that in the absence of a previous determination by the board, or in the courts, of the priorities or rights of claimants upon a particular stream,

an interested party may resort to the courts to obtain such relief as he may show himself to be entitled to. The jurisdiction of the courts remains as ample and complete after, as well as before, an adjudication by the board. But the principle applies here as in other cases, that a party may not re-litigate a question which has passed into final adjudication. And the courts will not assume in an independent action, to determine anew the rights of parties, which as between themselves, have been settled by the decree of the Board of Control; at least in the absence of fraud, or a showing of facts sufficient to vitiate a judgment.''

We think the principles so announced control the question now under consideration. If the statute of 1913 is constitutional, and the question of abandonment is determined thereunder by the Board of Control, it having its jurisdiction properly invoked, no doubt its decision would be final, subject to the right of appeal. If, however, in an action of which the district court has jurisdiction, a question of abandonment, not previously litigated, becomes an issue, we think the court has jurisdiction to determine it. See, also, Van Buskirk v. Livestock Company, 24 Wyo. 183, 156 Pac. 1122, 160 P. 387.

In addition to its rights under the decree of 1888, the plaintiff claimed an appropriation through the Bolln ditch for the irrigation of about 200 acres. The decree of the district court upheld this claim and established the right as prior and superior to the rights of the defendant under its permits of 1909 and 1911, hereinbefore mentioned. It is conceded that whatever right the plaintiff has to divert and use water through the Bolln ditch was acquired since the adoption of the constitution and the enactment of the state water law of 1890. Article VIII of the Constitution contains the following provisions:

Sec. 1. ''The water of all natural streams, springs, lakes or other collections of still water, within the boun-

daries of the state, are hereby declared to be the property of the state.

Sec. 2. ''There shall be constituted a board of control, to be composed of the state engineer and superintendents of the water divisions; which shall, under such regulations as may be prescribed by law, have the supervision of the waters of the state and of their appropriation, distribution and diversion, and of the various officers connected therewith. Its decisions to be subject to review by the courts of the state.

Sec. 3. ''Priority of appropriation for beneficial uses shall give the better right. No appropriation shall be denied except when such denial is demanded by the public interest.

Sec. 5. ''There shall be a state engineer who shall be appointed by the governor of the state and confirmed by the senate; he shall hold his office for the term of six (6) years, or until his successor shall have been appointed and shall have qualified. He shall be president of the board of control, and shall have general supervision of the waters of the state and of the officers connected with its distribution.'' No person shall be appointed to this position who has not such theoretical knowledge and such practical experience and skill as shall fit him for the position.''

At the first session of the state legislature, there was enacted a law approved December 22, 1890, ''providing for the supervision and use of the waters of the state.'' Ch. 8, Laws of Wyoming, 1890-91. Section 34 of that act provided, among other things, that any one thereafter intending to appropriate any of the public waters of the state should, before commencing construction, enlargement or extension of any distributing works, or performing any work in connection with said appropriation, make an application to the president of the board of control for a permit to make such appropriation. It requires that the

application for a permit shall, among other things, state the source from which the appropriation is to be made, the amount of the appropriation, the location and character of the proposed works, and the time at which the application of water to beneficial purposes shall be made, which time is limited to the time required for the completion of the work when prosecuted with due diligence. If it is intended that the water should be used for irrigation, the application should describe the lands to be irrigated. It is further provided that the application shall state additional facts required by the Board of Control. On receipt of the application, it is filed and recorded in the office of the State Engineer, and if on investigation it is found that there is unappropriated water in the source of supply named in the application, and if the appropriation is not otherwise detrimental to the public welfare, the Engineer shall approve the application. The application endorsed with such approval is then returned to the applicant, "who shall on receipt thereof, be authorized to proceed with such work and to take such measures as may be necessary to perfect such appropriation." It is further provided that: "If there is no unappropriated water in the source of supply, or if, in the judgment of said engineer, such appropriation is detrimental to public interests, the state engineer shall refuse such appropriation, and the party making such application shall not prosecute such work, so long as such refusal shall continue in force." There is provision for appeal from the action of the State Engineer to the Board of Control and from the Board to the courts. These provisions of Section 34 of the Act of 1890 have continued in force to the present day without any amendments material to our present inquiry. Secs. 835 to 842, Wyo. C. S. 1920.

It is conceded as to the Bolln ditch that the plaintiff has never conformed to the provisions of this law, and we are required to decide whether, under the constitution and the legislation of 1890, a lawful appropriation of waters can

be made without a permit, and without an application therefor. The question is one of considerable importance and of some difficulty. Its solution requires a careful consideration of the foregoing provisions of the constitution and statutes.

Directing our attention first to statute law of 1890, there would seem to be little need for construction or interpretation. When it is provided that before commencing the construction or enlargement of any distributing works, there must be an application for a permit, and that, if approval of the permit is refused, the party applying therefor shall not prosecute such work, it would seem quite clear, so far as the statute is concerned, that the permit is a condition precedent to the right to divert and appropriate water. If an applicant for a permit has no right to divert waters until the application is approved, it surely was not intended that a person who has never made such application could legally divert and use the waters of the state. Similar statutes seem to have been given their obvious meaning in Nebraska. Castle Rock Irrigation etc. Co. v. Jurisch, 67 Nebr. 377, 93 N. W. 690. It is argued, however, that Section 3 of Article VIII of the state Constitution, supra, requires a different construction, and that though a permit is necessary in order that the appropriator may have priority as of the date of filing his permit, an "appropriation" can still be made as under previous laws by diversion and use without a permit, with the only difference that such an appropriation will have priority only from the time of the application of the water to the beneficial use. The gist of the contention is that the statutes requiring a permit, if construed as preventing a diversion and use of the waters of the state without a permit, are unconstitutional.

The declaration of Section 3, Article VIII of the Constitution, that "priority of appropriation for beneficial uses shall give the better right" must be construed in connection with Section 1 of the same Article declaring that the

water of all natural streams, etc., are the property of the State, Section 2, providing that the Board of Control shall, under such regulations as may be prescribed by law, have the supervision of such waters and of their *appropriation, distribution* and *diversion,* and the last sentence of Section 3, that no appropriation shall be denied except when such denial is demanded by the public interest.   In the first place, it is to be noted that the framers of the Constitution deliberately refrained from including in that instrument any definition of the word "appropriation."   Debates of Wyoming Constitutional Convention, pp. 498, 500, 504. This was after the attention of the members of the convention had been called to the fact that some courts had construed an appropriation as being the commencement of work which was diligently pursued until the water was applied to the beneficial use, and other courts had held that it was the actual application of the water to the beneficial use.   It is clear, from the reports of the proceedings of the Constitutional Convention, that the precise method and system subsequently embodied in the law of 1890 was within the purpose of the convention.   Farm Inv. Co. v. Carpenter, supra, at page 144.   A member of the committee of the convention on Agriculture, Irrigation and Water Rights, in reply to an inquiry concerning the meaning of Section 3, supra, described in rather forceful language the old and the proposed new system of obtaining water rights, as follows (Debates, pp. 504-505):

"MR. BURRITT:  I will explain to Mr. Hay.   The present system, as the gentleman well knows, is for a man to rush out to the creek, as has been done in the gentleman's own county, and without consulting anybody, finding out anything about whether there is any water there or not, he rushes in and begins a ditch, and rushes into court and begins a law suit.   Now this system proposes to revise the order of things, and instead of rushing all over the country, and beginning a ditch and taking the chances about

getting any water, we propose to have them get permission to construct ditches from the board of control. In other words all the information necessary to enable a man to do the wise thing in this matter will be with the board of control. This provision is to revise this system from what we have it now, and instead of allowing ditches to be taken out without any system at all, to have a man find out from the board of control just what he can do."

The contemporaneous construction of these provisions of the Constitution by the administrative officers is shown in the report of Mr. Elwood Mead, who was Territorial Engineer at the time of the adoption of the Constitution, and State Engineer upon the admission of the State into the Union. This report, evidently prepared after the adoption of the Constitution, but before the admission of the State, contains the following (2nd Ann. Rep. Terr. Eng. Wyo. p. 97):

"If state ownership is to be anything but a delusion, if it is to be more than nominal, there must be the same authority and control over streams and over diversion of water·as is now exercised by the general government over the occupation and settlement of public lands. No diversion or appropriation should be permitted, therefore, until the sanction of the territory, through its constituted authorities has been obtained, and the beneficial character of the proposed use established. Such oversight and precaution is necessary for the proper protection of public interests (public water supply being of greater agricultural value than public lands) and in order that controversies growing out of extravagant and injurious claims may be avoided.

Instead of the present absence of supervision over either the nature of the diversion and use or the amount of the claim, I would recommend that·each and every intending appropriator be required to make application to the irriga-

tion authorities for a permit to divert and use the public waters and that approval of such authorities must be had before work is begun. For convenience in recording, and as a matter of economy, I would recommend that all such applications be made to the territorial engineer.''

In this connection it is interesting to note that Mr. Mead, in a work entitled ''Irrigation Institutions,'' published in 1903, had this, among other things, to say about the Wyoming laws under the Constitution (pages 268 and 269):

''Construction cannot legally proceed until the State Engineer has approved the application. This gives large powers to the State Engineer, but the applicant is protected from arbitrary action by his right of appeal. * * * The right to appropriate water can be obtained only by compliance with the law. Use without compliance will not answer.''

While this court has never had occasion directly to pass on the question, we find in our reports several expressions which seem to indicate the opinion that since the Act of 1890 no lawful diversion of water could constitute an appropriation unless based upon a permit. In Moyer v. Preston, 6 Wyo. 308, 325, 44 P. 845, 850, 71 Am. St. Rep. 914, the court referred both to the territorial laws, which provided for the filing of statements of claimed water rights, and to the state law, as follows:

''To file such a statement under the Acts of 1886 and 1888, no previous application for a permit to initiate and complete an appropriation was required as is the case with the later legislation.''

In Farm Inv. Co. v. Carpenter, supra, it was said (at page 128 of 9 Wyo., 61 Pac. 262) in reference to the act of 1890, that:

"Thereafter before any person shall commence the construction, enlargement, or extension of any distributing work in connection with an intent to appropriate any of the public waters of the state, it was and is *exacted of him* that he apply to the president of the Board of Control for a permit to make such appropriation."

In Whalon v. Canal Company, 11 Wyo. 313, 344, 71 Pac. 995, 998, it was said that:

"Formerly any person could, without permission of any one, inaugurate and complete an appropriation of water. And many appropriations now existing, made before the adoption of the present statutes, have been established, and others will be established, in respect to priorities, upon evidence as to time of commencing work or making surveys. Since the enactment into our laws of the system now in force, a water right is not inaugurated by constructing a ditch. The law provides that before beginning construction an application for permit shall be filed; and upon its approval the applicant is authorized to proceed with construction."

In C. B. & Q. R. R. Co. v. McPhillamey, 19 Wyo. 425, 433, 118 P. 682-684, Am. Cas. 1913 E. 101, in referring to the case of Moyer v. Preston, supra, it was said that:

"The law then in force (controlling?) was the act of the territorial legislature, approved March 11, 1886, which with a few changes not material to the question here involved remained in force until 1890, when the whole subject of initiation of water rights was transferred to the state engineer and board of control under regulations prescribed by the later act."

By a statute passed in 1909 a water right is defined as "a right to use the water of the state, when such use has been acquired by the beneficial application of water under

the laws of the state relating thereto, and in conformity with the rules and regulations dependent thereon." C. S. 1920, Sec. 832.

In determining the meaning of a written law it is proper to consider the evils sought to be remedied. The laws of the Territory had permitted the diversion of water without any state supervision of the works and without any adequate notice and record of the amount, purpose and date of the appropriation. Defective and badly located diversion works often made the use of water wasteful. No right became definite until it was adjudicated in court, and adjudications were often long delayed and then made on inaccurate testimony and without any disinterested measurements of the ditches or of the lands irrigated. Until such an adjudication, no subsequent appropriation could be made with safety, for no one could tell the amount of unappropriated water in the stream. The evils attendant on such a system and the importance of providing a different system that would give the state the unquestioned right of control, had become well recognized at the time the constitution was framed. See: 2nd Annual Rep. Terr. Eng. Wyo. (1889) pp. 3, 12, 16, 37, 41, 58, 69 and 98. To correct these defects in the old system, it was provided by the constitution not only that the waters of the state are the property of the state, but also that those waters, and their *appropriation, distribution and diversion,* shall be under the supervision of a state board of control. This supervision, it was hoped, would cure many of the evils of the old system, and we think that hope has been justified by the later events. The constitutional declaration that priority of appropriation for beneficial uses shall give the better right was not intended to prevent the legislature from prescribing reasonable conditions that must be complied with before a lawful appropriation could be made. Their power in this respect is both recognized and limited by the further provision of the constitution, carried into the statutes, that "no appropriation shall be

denied except when such denial is demanded by the public interests.'' In interpreting this language, we must give consideration to the contemporaneous recognition not only of the importance of state supervision of the diversion of waters, but also of the fact that such supervision could not be effective, nor intelligently exercised, without accurate and complete information of proposed appropriations. The legislature has decided that the public interests demand that such information shall be given to the state board by an application for a permit, and that until such an application is approved, no appropriation can be lawfully made. We believe these requirements are reasonable in so far at least as they are questioned in this case.

As already stated, we believe the intent of the legislature appears plainly from the statute. The statute must, of course, be construed in the light of the constitution. The pertinent constitutional provisions do not require any different construction of the statute, nor do they render it invalid. This view accords with that of the members of the constitutional convention, the legislature, the administrative officers of the state, and is agreeable to the opinions of this court in so far as they have been heretofore expressed without having the question for decision. We may say further that we believe the people of the state generally have cheerfully accepted the same view, and that water users have been satisfied to act accordingly for the past thirty-five years.

A different decision would leave prevalent many of the acknowledged evils of the Territorial system intended to be superceded by the system of state control contemplated by the constitution and carried into effect by the law of 1890. The plaintiff is willing in this case to concede that its right under the Bolln ditch would take priority only from the date of the application of the water to the land. Another claimant of a similar right might not be willing to make that concession. If a right may be lawfully acquired by diversion and use since 1890 without compliance

with the state laws, it might be impossible to find a sufficient reason for holding that the right would not have priority as of the date of commencement of the work. If that condition should prevail, there would seem to be no advantage to be gained by proceeding under a permit, and we would be thrown back to the confusion incident to the haphazard methods of the old system. We are not unmindful that under the water laws of other western states it is pretty generally held that a right to appropriate waters may be acquired by diversion and application to beneficial use without following statutory provisions. This is stated as the general law by Kinney (Kinney on Irrigation (2nd Ed.) §§ 1357, 1358), and may have been the rule under our Territorial laws. Moyer v. Preston, 6 Wyo. 308, 325, 44 Pac. 845, 71 Am. St. Rep. 914; Morris v. Bean, (C. C.) 146 Fed. 423. In addition to the cases cited by Kinney, see: Haight v. Costanich, 184 Calif. 426, 194 Pac. 26; Kendall v. Joyce, 48 Wash. 489, 93 Pac. 1091; Murray v. Tingley, 20 Mont. 260, 50 P. 723; Farmers' Development Co. v. Rayado Land & Irr. Co., 28 N. Mex. 357, 213 Pac. 202.

While these cases may all be distinguished on the general ground that under different constitutions and statutes each announces a policy that we are unable to find in our constitution and laws, they have had the effect of causing us to proceed with caution in our consideration of the question. We shall not undertake more particularly to distinguish the cases relied upon by plaintiff, except Neilson v. Parker, 19 Idaho 727, 115 Pac. 488, the case most nearly in point, decided under statutes somewhat similar to those of Wyoming requiring a permit from the state engineer. The constitution of Idaho, like that of Wyoming, provides that "priority of appropriation shall give the better right." This provision is coupled, however, with the unqualified declaration that "the right to divert and appropriate the unappropriated waters of any natural stream to beneficial uses, shall never be denied." Const.

Idaho, Sec. 3, Art. 15. The provisions of the Idaho consti-
tution that the use of appropriated waters is subject to
the regulation and control of the state (Sec. 1, Art. 15)
are probably susceptible of a much narrower construction
than we are willing to give to the corresponding provisions
(§§ 2 and 5, Art. VIII) of the constitution of Wyoming.
The constitution of Idaho was adopted in 1889, and be-
came operative on the admission of the state in 1890. For
some years thereafter the Territorial laws in regard to ap-
propriation seem to have continued in force, and as late
as 1899 an act was passed providing for the initiation of a
right to appropriate water by the posting and filing of a
notice. Laws of Idaho, 1899, p. 380. It was not until 1903
that an act was passed requiring a permit. Though this
act followed in many particulars the Wyoming law of
1890, we do not find in it the provision that the party ap-
plying for a permit shall not prosecute the work so long
as the refusal of his permit continues in force. On the
other hand, the Idaho law provides that it is "the duty of
the State Engineer to approve all applications, made in
proper form, which contemplate the application of water
to a beneficial use." Idaho Rev. Codes, § 3254. The right
to make an appropriation by diversion and use without
any state supervision of the initiatory steps, as under Ter-
ritorial laws, was recognized in Wyoming as the cause of
evils designed to be corrected by the constitution and stat-
utes, while, on the other hand, in Idaho, it was no doubt
considered, under different circumstances, that such right
should not be abridged so long as there is unappropriated
water to be had.

It follows that the part of the decree which gives the
plaintiff a priority for use of water through the Bolln
ditch cannot be upheld.

By reason of the forfeiture declared of the defendant's
claimed rights under the decree of 1888, it followed, and
was decreed by the district court in this action, that the
plaintiff's priorities No. 5 and No. 19, as established by

the decree of 1888, were superior to any rights of the defendant. Diversion under priority No. 5 is made by means of the Stewart Ditch and under priority No. 19 by the Kingman Ditch. At the time of the commencement of this action the Stewart ditch was used for the irrigation of about 97 acres and the Kingman ditch for about 342 acres. There was evidence that of this irrigated area, about 41 acres under the Stewart Ditch is covered by an extension made in the year 1890, and that about 177 acres under the Kingman Ditch was not irrigated from about 1885 until 1922. The defendant claims that in these circumstances it was error to allow the plaintiff a priority for more than 56 acres under the Stewart Ditch and 165 acres under the Kingman ditch. We understand that it is not contended that the plaintiff has lost a part of its rights under the decree of 1888 by abandonment, for no issue of abandonment of those rights was made by the pleadings. The contention seems to be that we should apply the same principle announced with reference to the plaintiff's claimed right under the Bolln Ditch, and hold that when the state laws went into effect the grantors of the plaintiff had no right to appropriate water for the irrigation of more than 56 acres under the Stewart Ditch and 165 acres under the Kingman Ditch, and that to acquire a right to irrigate a greater area a permit should have been obtained under the state laws. This contention cannot be sustained. If, as the evidence shows, the Stewart ditch was extended in 1890 to cover the questioned acreage under that ditch, we think the trial court was justified in finding that the appropriation through the extension was pursuant to the decree of 1888, and before the enactment of the law of December, 1890, requiring a permit. There was evidence that the questioned acreage under the Kingman Ditch was irrigated prior to the decree of 1888, and if so, the right to an appropriation therefor was undoubtedly established by the decree of 1888, and, in the absence of any issue of

abandonment, we see no reason for holding that it was lost.

We think there was no error in sustaining plaintiff's right to priorities No. 5 and No. 19 as established by the decree of 1888, nor in declaring a forfeiture of defendant's rights to priorities No. 2 and No. 13 established by the same decree. Besides priorities No. 5 and No. 19, the plaintiff claimed no appropriation except through the Bolln Ditch. When we hold that there has been no lawful appropriation through that ditch, it follows that plaintiff is not interested in having a forfeiture declared of any of defendant's rights that are of later priority than No. 19 under the decree of 1888. Accordingly, the declaration of abandonment in the decree in this case will be limited so that it will not effect any of defendant's claimed appropriations that have a priority later than No. 19.

The contract between the city and the defendant is summarized in our previous opinion on the motion to dismiss the appeal. 222 Pac. at page 1033. The contract refers to two sewer lines, one, the "sanitary trunk line" discharging into the "diverted channel of Crow Creek" at a point where the creek flows across the lands of the defendant, the other, the "sanitary sewer east of Lake Minnehaha," discharging into a ditch on the lands of the defendant. The defendant agreed that the city might maintain the two sewers across the lands of defendant, and discharge the sewage content at the places mentioned, and the city in consideration thereof granted to the Packing Company the "perpetual right to use the waters and all of the same emptied from the sewer."

The plaintiff asserts that this contract is void because it is an effort to create a perpetual right contrary to public policy, and because the city could not thus contract away its right under the police power to control the disposition of its sewage. We think, as indicated in our opinion on the motion to dismiss, 222 Pac. 1027, that the plaintiff, which does not sue as a citizen or taxpayer of

Cheyenne, has no right to attack the contract on such grounds. The plaintiff, however, also contends that the contract does not give to the defendant the right, which the defendant claims, to divert waters from Crow Creek into which one of the sewers is discharged. This point was proper to be adjudicated.

The decree of the district court declared said contract void, in so far as it purported to grant to said defendant any interest in said sewage or to deliveries thereof, and that the defendant was not entitled to the use of any part of the waters of Crow Creek or waters discharged from said sewer, "under or by virtue of said contract." In challenging this part of the decree, the defendant claims that the city has the right to dispose of its sewage by delivery to defendant as provided in the contract. In support of the decree the plaintiff claims that the sewage of the city is controlled by the rules in regard to surplus or waste water, which, when it is started on its return to the stream from which it had previously been diverted, becomes again a part of the public waters of the state, and not subject to disposition by the appropriator who had previously used it to the full extent contemplated by his appropriation. We think neither of these contentions can be wholly sustained.

It is not strange that we are unable to find any cases considering the right of a city to dispose of its unpurified sewage for irrigation purposes. Most of the controversies with respect to sewage that have gotten into the courts concern the rights of those who claim that in disposing of its sewage the city is guilty of maintaining a nuisance. In this case both the plaintiff and defendant are satisfied, for the present at least, and in fact insist, that the city discharge its sewage in such a way and at such place as will permit them to use it. It is well known that the disposition of sewage is one of the important problems that embarrass municipalities. In order to dispose of it without injury to others, a city may often be confronted with the

necessity of choosing between several different plans, and in the selection of the plan to be followed, we think it should be permitted to exercise a wide discretion. In determining how it will make a proper disposition of that which may be termed a potential nuisance, we think the city should not be hampered by a rule that would always require the sewage to be treated as waste or surplus waters. Sewage is something which the city has on its hands, and which must be disposed of in such a way that it will not cause damage to others. It would often be considered the height of efficiency if it could be disposed of in some other manner than by discharging it into a stream. Even in this state where the conservation of water for irrigation is so important, we would not care to hold that in disposing of sewage the city could not adopt some means that would completely consume it. It might, we think, be diverted to waste places, or to any chosen place where it would not become a nuisance, without any consideration of the demands of water users who might be benefited by its disposition in some other manner. In providing such a place the city might acquire the right to discharge the sewage on the lands of any person willing to suffer such a use of his lands, and we see no reason why this right might not be gained by the city in consideration of the land owner's right to use or dispose of the sewage in any lawful way. From these views with reference to the city's rights, it follows that the sewage deposited from the so-called "sewer east of Lake Minnehaha" should not be considered as a part of the public waters of the state subject to the rights of the appropriators from Crow Creek. It is our opinion, therefore, that the plaintiff, as an appropriator of waters of Crow Creek, has no right to question the contract between the city and the defendant in so far as it provided for the discharge and use of sewage from the sewer line last mentioned.

We think, however, that the defendant's claim by virtue of the contract with the city for the discharge of the sewage from the "sanitary trunk line," presents a different question. The sewage from this sewer line is deposited in the "diverted channel," which the evidence shows is in fact the channel of the stream. The city in operating its sewers uses therefor a large portion of the waters of Crow Creek appropriated for that and other municipal purposes. We need not pause to inquire whether such appropriated waters, while in the city's conduits, are the property of the state or of the city, a question on which the decisions seem not to be in accord. Whether the city owns such waters or has merely a right to their use is immaterial in this case, for all the authorities agree that when the appropriated waters have been used to the full extent intended by the appropriation, the quantity unconsumed and returned to the stream is then a part of the waters of the state. In Edwards v. Cheyenne, 19 Wyo. 110, 114 Pac. 677, 122 P. 900, followed in Holt v. Cheyenne, 22 Wyo. 212, 137 Pac. 876, it was held that the city might devote to other purposes a part of its public water supply without interfering with the public character of the right. No rights of subsequent appropriators were involved in those cases, and nothing therein can be taken as establishing any principle that would authorize the city to control the rights of subsequent appropriators from a stream to which the city returns waters that have served the purpose of their appropriation by the city. The full, beneficial use of the waters that have become a part of the sewage may, because of the necessity of disposing of the sewage, require that such water, a part of the sewage, be consumed, or so diverted that it does not again become a part of the waters of the stream. But the sewage deposited in Crow Creek is not consumed, and is not so diverted. It becomes mingled with the waters of the stream and, as is conceded, the water content of the sewer increases the

volume of water in the stream suitable for irrigation. The city's right to the beneficial use of the water has been fully enjoyed, and the water has been returned to the stream where it is susceptible of further beneficial use by other appropriators. This further use must be had under state control by those who have acquired rights under the state laws. It follows that the defendant has no right to divert any of the waters of Crow Creek by virtue of its contract with the city, and the decree of the district court in that respect cannot be disturbed.

The defendant complains of errors in the denial of its motion to strike from the plaintiff's petition certain allegations claimed by the defendant to be conclusions of law, and in several rulings on objections to the admission of evidence. We do not believe any of these matters require discussion. Under the law that controls the merits of the controversy, the result must have been the same if all the questioned rulings had been different.

The judgment of the District Court will be modified to conform to the views herein expressed.

The plaintiff's motion to dismiss because the city is not made a party to the appeal was discussed in our opinion in 222 Pac. 1027, but not then finally disposed of. From what was said in that opinion on the motion, and in this opinion on the merits, we think it appears that the only question in issue with respect to the discharged sewage waters was a question between the plaintiff and the defendant Packing Company, the former contending that such waters became a part of the public waters subject to appropriation under the laws of the state, and the latter contending that it had a right to said waters by grant from the city. That question could have been determined without bringing the city into the case. The city, therefore, was not a necessary party, and the motion to dismiss will be denied.

The modified decree will provide that the costs in the District Court be paid one-half by the plaintiff and one-half by the defendant Packing Company, and the costs in this court will be taxed to the same parties in the same proportions.

Potter Ch. J., and Blume, J., concur.